Harold E. Koreman, J.
The defendant moves to set aside and vacate the service of process upon it and to dismiss the complaints. The actions are brought to recover damages for personal injuries sustained on March 4, 1962 and resulting from alleged breach of warranty and negligence on the part *866 of the defendant. The actions were commenced by the service of bare summonses on defendant. After defendant’s motions were made, counsel stipulated to adjourn same and to extend the time for service of complaints until decisions were handed down by the Court of Appeals in matters bearing directly on the issues involved herein. Following said decisions, the respective complaints were served.
The actions arise out of the alleged sale of a threaded rod (or stud) by the defendant to Charles Millar & Son Co., a wholesale and retail supplier of hardware in Utica, New York, hereinafter called Millar. It is alleged that Millar, in turn, sold the threaded rod to a certain individual and company engaged in the business of constructing ski lifts who, in turn, used said bolt in the construction of a ski lift which was sold to the operator of a ski resort. The complaints allege that the plaintiffs were injured when the ski lift, upon which they were riding, collapsed.
Defendant has its office and place of business in East Chicago, Indiana, and is not licensed to do business in New York, has no offices, and keeps no record books and bank accounts in this State. All orders for its product from places outside of Indiana are received by defendant subject to its acceptance and are shipped to the purchaser f. o. b. East Chicago, Indiana.
Separate actions have been brought by the plaintiffs against Millar, the persons who constructed the ski lift, and the operator of the ski lift.
It is claimed by plaintiffs that the accident occurred when the threaded rod broke because it was defectively manufactured by the defendant. Defendant denies that the rod in question was manufactured by it, and alleges that, in any event, if it was its rod, it was so changed by the welding process required in the fabrication of the ski lift that it became an entirely new substance. There is no question that certain adjustments or change of the original threaded rod were necessary to adapt it for use in the erection of the ski lift, and plaintiffs do not dispute this.
The allegations in the complaints upon which plaintiffs base their claim of jurisdiction over the nondomiciliary defendant are that the threaded rod was manufactured by the defendant in Indiana and shipped by it to the place of business of Millar in this State; that Millar ordered the rods from defendant by mail; that the orders were placed from information and catalogues delivered by the defendant to Millar; that the defendant has been Millar’s sole source of the threaded bolt; and that *867 defendant sold its product in quantity to other hardware stores in New York in the same manner.
The defendant contends that jurisdiction cannot be acquired over it for the reasons that there is no claim that any of the alleged tortious acts were committed by it within the State, and its contacts with the State were too minimal to constitute the transaction of business within the State, and, therefore, the requirements of CPLR 302 (subd. [a], pars. 1 or 2) have not been met. Further, that even if it could be said that the defendant was transacting business within the State, there is no evidence that plaintiffs ’ alleged causes of action arose out of such business transactions since there is no proof that the particular rod which allegedly broke was fabricated from a bolt which had been sold by defendant, and whatever article was incorporated into the ski lift as a “ stud” was of a substantially different substance from the bolt which is alleged to have been made and sold by the defendant originally.
To sustain jurisdiction over this defendant, plaintiffs are required to show that the cause asserted is one arising from the purposeful activity engaged in by the defendant in connection with the sale of its products in the New York market (Singer v. Walker, 15 N Y 2d 443, 464).
The plaintiffs have submitted an affidavit by Victor E. Hall, president of the company that constructed the ski lift, in which it is stated that the threaded rod or bolt used in the ski lift was purchased from Millar in 1958. Plaintiffs also submit an affidavit by the vice-president of Millar, in which it is stated that a salesman of the defendant made periodic visits to Millar and left price lists and information regarding defendant’s product; that price lists were also sent by defendant to Millar by mail. In addition, in an affidavit by the treasurer of Millar, it is alleged that the defendant was Millar’s sole supplier of threaded rods, and that the rod sold by Millar to the company that constructed the ski lift was the defendant’s product.
Defendant admits, in an affidavit by its president, that prior to 1962 it employed a salaried salesman who resided in and worked out of New Jersey, and who was engaged in promoting sales of defendant’s product in New York as well as other eastern States; that potential customers were brought to the attention of the defendant by the salesman and orders resulted from his efforts. The affidavit also discloses that the defendant solicited business by means of catalogues, advertisements and other promotional material circulated directly by it in this State. This latter activity was engaged in by the defendant during the *868 employment of the salesman and after he was replaced by an independent manufacturers’ representative. Defendant contends, however, that it was not Millar’s sole supplier of threaded rods. Its president claims that the plaintiffs have not established this to be a fact, and its attorney claims to have discovered other manufacturers who sold the same product to Millar. Defendant takes the position that, under such a state of facts, and with the additional factor that, if it was its product, it was so changed as to become an entirely different product, plaintiffs have failed to show that the causes of action arose out of the transacting of any business by it in this State.
The question to be decided is whether there is an adequate showing here of a cause of action arising from the transaction by the defendant of any business in this State, according to the standards enunciated in Singer v. Walker (supra) ; Lewin v. Bock Laundry Mach. Co. (16 N Y 2d 1070) and Johnson v. Equitable Life Assur. Soc. of U. S. (16 N Y 2d 1067). (See Kramer v. Vogl, 17 N Y 2d 27.) Chief Judge Desmond, speaking for a unanimous court in Kramer v. Vogl stated (pp. 31-32): “ We do not have here, as we had in Singer, Lewin and Johnson (supra), a nonresident defendant who has one or more local salesmen in this State or who solicits business in this State by means of catalogue, advertisements or other promotional material circulated here. All we know is that these defendants in Austria made arrangements to sell merchandise f. o. b. to the local distributor. Defendants themselves carried on no sales, promotion or advertising activities in this State.”
Applying the court’s reasoning in Kramer, Singer, Lewin, and Johnson (supra), to the facts here, it appears that the activities in which the defendant engaged in this State were adequate to meet the liberal statutory criterion. It is not disputed that, at least during the time when the threaded rods apparently were purchased by Millar from the defendant, the latter employed a salesman in this State, and solicited business here by means of catalogue, advertisements and other promotional material circulated by the defendant itself in New York. The fact that only a small percentage of profit was realized by defendant from its business in New York is not by itself controlling on the question of whether personal jurisdiction may be asserted. We are dealing here with a product that can be purchased at a very nominal cost, and in view of the total dollar volume of defendant’s business throughout the country, the sales in New York would appear to be no less than those in any other State in which defendant transacts business. To determine whether this defendant may be required to submit to the juris *869 diction of our courts, we must examine the activities in which it engaged in connection with the sale of its product in the New York market. They are sufficient to meet the requirements of the statute.
Defendant maintains that, apart from the question of whether it had sufficient “ contacts ” with New York, the plaintiffs have not shown unqualifiedly that the threaded rod used in the ski lift was the defendant’s product; that if it was, the substance of the product was altered completely by its use in the ski lift, and further, that it had no knowledge and no reason to believe that the rod would be put to such use.
The actions are based upon allegations that the defendant negligently designed and manufactured a multi-purpose threaded rod, which, it is alleged, eventually caused the accident and injuries to the plaintiffs. It is not required, for the purposes of this motion, to establish defendant’s responsibility by the same degree of proof required upon the trial of the action. This dispute bears upon the question of ultimate liability, and in order to ascertain whether New York courts have jurisdiction, it is not necessary to determine the existence or theory of liability in advance of trial. Enough has been shown to indicate the existence of a controversy which, if resolved in plaintiffs’ favor on the facts and the law, would warrant the assumption of jurisdiction under CPLR 302 (subd. [a], par. 1). Unless jurisdiction is upheld, the question of liability cannot be decided. (Singer v. Walker, supra, concurring opn. Van Voorhis, J.)
As to defendant’s argument that to apply CPLR 302 retroactively under the facts of this case would be a denial of due process and would be violative of its substantive rights, it is only necessary to point out that the retroactive application of its provisions has been upheld as constitutionally valid. (See Simonson v. International Battle, 14 N Y 2d 281; Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N Y 2d 443, 453, 454.) The actions were commenced following the effective date of the statute even though based upon acts alleged to have occurred prior to its enactment. It does not appear that this is such an exceptional situation that ‘1 might give rise to constitutional questions”. (Simonson v. International Bank ; Longines-Wittnauer v. Barnes & Reinecke, supra, p. 454.)
In my opinion, there has been a sufficient showing under the prevailing case law that the causes asserted arose from purposeful activity engaged in by the defendant in connection with the sale of its product in the New York market, and, those contacts of the defendant with New York which are not in dispute, are sufficient to satisfy the requirements of CPLR 302 (subd. *870 [a], par. 1). (Kramer v. Vogl; Singer v. Walker; Lewin v. Bock Laundry Mach. Co.; Johnson v. Equitable Life Assur. Soc. of U. S., supra.)
Since the requisite nexus with this State demanded by due process is present here, the nondomiciliary defendant is subject to the jurisdiction of this court. (International Shoe Co. v. Washington, 326 U. S. 310; McGee v. International Life Ins. Co., 355 U. S. 220.) Motion denied in each action.