**AMERICAN MESSER CORPORATION,**
**Plaintiff,**

v.

The **TRAVELERS INDEMNITY COMPANY, Defendant.**

The **TRAVELERS INDEMNITY COMPANY, Defendant and Third-Party Plaintiff,**

v.

**ADOLF MESSER GmbH, and Messer Griesheim GmbH, Third-Party Defendants.**

No. 67 Civ. 2570.

United States District Court
S. D. New York.

Sept. 25, 1968.

Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, for plaintiff.

Bigham, Englar, Jones & Houston, New York City, for defendant and third-party plaintiff; John M. Aherne, James J. Taylor, New York City, of counsel.

Liddy, Sullivan, Hart, Daniels & Baxley, New York City, for third-party defendants; Charles E. Baxley, New York City, of counsel.

## OPINION

BONSAL, District Judge.

American Messer Corporation (American Messer), a New York corporation, instituted this action in February 1967 in the New York Supreme Court against The Travelers Indemnity Company (Travelers), seeking to recover on two insurance policies issued by Travelers in 1963 to cover physical loss or damage to eight rectification columns, which were manufactured in Germany by Adolf Messer GmbH (Adolf Messer), a German corporation, and installed in two air separation plants of Air Reduction Company (Airco) by American Messer. There being diversity of citizenship between the parties, the action was removed to this court in July 1967.

In February 1968, Travelers served a summons, third-party complaint, and an amended third-party complaint upon Adolf Messer and Messer Griesheim GmbH (Messer Griesheim), a German corporation, in Frankfurt, Germany (the third-party defendants, being hereinafter referred to as "German Messer"). In its amended third-party complaint, Travelers alleges that the loss and damage to the rectification columns was due to a breach of warranty and negligence by German Messer in the design and construction of the columns, and that Travelers is subrogated to the rights of American Messer against German Messer for the alleged breach of warranty and negligence.

In August 1963, Airco, a New York corporation, and American Messer entered into negotiations which resulted in a contract for the construction of two air separation plants in Alton, Illinois (the Alton plant) and Micheaud, Louisiana (the Micheaud plant). Airco and American Messer had dealt with each other on prior occasions with respect to similar plants.

In connection with the design and fabrication of the plants, American Messer wrote to German Messer to inquire if German Messer was interested in constructing the rectification columns, which were an essential part of the plants. By written reply, German Messer offered to do so and in September 1963 and November 1963, American Messer sent purchase order forms to German Messer for eight rectification columns for the Alton and Micheaud plants. Pursuant to the agreements, German Messer designed, fabricated, tested, and then shipped the rectification columns to the sites of the two plants.

In April 1964, Travelers issued two insurance policies covering "American Messer Corporation and/or Air Reduction Company and/or Contractors and/or Subcontractors" against "all risks of physical loss or damage" to "any and all materials, equipment, machinery, tools, and supplies while in transit to named separation" plants in Alton, Illinois, and Micheaud, Louisiana, "by land, air and water conveyance between points in the United States and/or Canada to erection site[s] * * * or otherwise in transit, and while there awaiting and during erection and testing until final acceptance of the entire project * * *."

In February 1965, Airco complained to American Messer of trouble with the rectification columns in the Alton plant. Dr. Hans Messer, President of German Messer and Vice-President of American Messer, who was visiting the United States during this time, was informed of the complaint; in early September 1965, American Messer ordered replacement columns from German Messer.

Thereafter, in October and November 1965, problems developed with the columns at the Micheaud plant. German Messer employees, including Mr. Stahl, head of the design department, and Mr. Westenberger, a "start-up" engineer, went to Micheaud to inspect the columns and the plant. Mr. Stahl returned to New York where three meetings with German Messer, American Messer, and Airco personnel were held to discuss Mr. Stahl's inspection and the problems at the two plants. Dr. Messer was present and participated in the third meeting in New York.

In December 1965, American Messer held a meeting in New York with Travelers to discuss the insurance coverage problems associated with the damage to the rectification columns. A German Messer insurance specialist, Mr. Istas, attended this meeting in New York. In 1966, all the columns were replaced by German Messer.

American Messer alleges in its complaint that it suffered damages to the extent of over $970,000 on account of the physical damage to the rectification columns, and instituted this action to recover the amount of its damages under its policies with Travelers.

German Messer now moves, pursuant to Rule 12(b), F.R.Civ.P., to set aside the service of process and dismiss the amended third-party complaint on the ground that the court lacks jurisdiction over them; or, alternatively, pursuant to Rule 56, F.R.Civ.P., to dismiss the amended third-party complaint as a matter of law.

Travelers opposes German Messer's motion contending that German Messer is subject to *in personam* jurisdiction in New York by reason of § 302(a) (1), C.P.L.R., which provides that

"As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, * * * who in person or through an agent:

"1. transacts any business within the state * * *."

In considering whether German Messer was transacting business in New York so as to be subject to *in personam* jurisdiction under § 302(a) (1), the following facts appear from the affidavits and deposition submitted with the motion papers.

In 1963 and 1964, German Messer, among other things, designed and constructed the component parts for cryogenic (low temperature) plants, including rectification columns. German Messer's cryogenic products are distributed in the United States exclusively by American Messer, one-half of the stock of which was owned by German Messer.* As American Messer's vice-president, Dr. Messer received a salary from American Messer of $6,000 to $10,000 a year.

As exclusive distributor, American Messer occasionally refers American customers to German Messer, but more often solicits business on the basis of the Messer name and then places orders for cryogenic equipment with German Messer. Brochures made available by American Messer to potential customers are prepared, printed, and supplied free of charge to American Messer by German Messer. Both American Messer and German Messer place advertisements in

---

* In 1967, after the action was filed, German Messer bought the other half of American Messer's stock. Dr. Messer then became Chairman of the Board of American Messer.

international periodicals which have some circulation in New York.

In 1956, American Messer, as German Messer's United States representative, registered a trademark for German Messer with the United States Patent Office, which mark consisted of the word "Messer" printed in a distinctive type. This trademark was renewed in 1961. Dr. Messer gave a power of attorney to a New York resident to file the affidavit and renewal application.

American Messer had unrestricted use of the German Messer trademark and the mark appears, for example, on American Messer's purchase order forms sent to German Messer and German Messer's memoranda to American Messer dealing with the rectification columns involved in this action. In 1965, German Messer dropped the trademark and adopted a new "corporate identification" which American Messer also uses.

In his dual function as vice-president of American Messer and president of German Messer, Dr. Messer made periodic visits to the United States, including eight visits to New York from 1963 to 1965. During these visits, Dr. Messer would meet with other officers of American Messer and with representatives of large corporations in New York, including Airco, Borden's, Socony, and Union Carbide, who were customers of American Messer, to interest them in German Messer's products.

From at least 1965 until the present, American Messer owed German Messer a substantial sum of money; in February 1968, the debt amounted to $2,175,-000; by agreement between the corporations, any recovery by American Messer on account of the Travelers' insurance policies will be paid to German Messer.

Travelers argues that German Messer's President, Dr. Messer, solicited business in New York for German Messer on his periodic visits to New York; that the corporation engaged in purposeful activities in New York by sending its employees, including Dr. Messer, to engage in conferences in New York, and thereby sought the benefit and protection of New York law; that American Messer, as the exclusive distributor of German Messer's products and co-user of its trademarks, was the exclusive agent of German Messer for purposes of jurisdiction, and that the cumulative effect of these activities provided more than sufficient contacts with New York to constitute the "transact[ion of] any business."

On the other hand, German Messer contends that any conferences in which German Messer personnel may have participated are insufficient to provide a basis for jurisdiction; that American Messer is an independent contractor which solicits customers for its own account; and that even as a "limited agent" of German Messer, American Messer's activities cannot be imputed to German Messer for purposes of jurisdiction. Finally, German Messer argues that Dr. Messer's visits over a period of years were primarily devoted to personal matters and American Messer's business, and that the remainder of his time during these visits devoted to German Messer was insufficient to sustain jurisdiction.

German Messer's contentions would have some force if its activities were to be viewed separately. However, when viewed cumulatively, Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N.Y. 2d 443, 458, 261 N.Y.S.2d 8, 19, 209 N.E. 2d 68 (1965), German Messer's substantial contacts with New York afford an adequate basis for sustaining jurisdiction under § 302(a) (1), C.P.L.R.

Activities in New York such as the solicitation of business for German Messer by Dr. Messer, participation by Dr. Messer and other employees of German Messer in conferences in New York with American Messer and Airco with respect to the problems of the rectification columns, and participation by a German Messer employee in a conference in New York with American Messer and

Travelers with respect to the insurance coverage, would be sufficient under § 302 to sustain jurisdiction, see Liquid Carriers Corp. v. American Marine Corp., 375 F.2d 951, 955 (2d Cir. 1967); Steele v. De Leeuw, 40 Misc.2d 807, 244 N.Y.S. 2d 97 (Sup.Ct.1963). See also A. Millner Co. v. Noudar, Lda., 24 App.Div.2d 326, 266 N.Y.S.2d 289, 292 (First Dept.1966).

In addition to these factors, American Messer was German Messer's exclusive distributor in the United States; American Messer was supplied by German Messer at no expense with brochures and advertising which American Messer used to solicit business for both corporations; American Messer had applied for trademarks on German Messer's behalf and had unrestricted use of them for a period of years; finally, German Messer owned 50% of American Messer's stock and the two corporations had a principal officer in common throughout the period involved in this litigation. Taken cumulatively, the activities of German Messer in New York leave no doubt that it was transacting business in New York within the meaning of New York's long arm statute. A. Millner Co. v. Noudar, Lda., supra; Buckley v. Redi-Bolt, Inc., 49 Misc.2d 864, 268 N.Y.S.2d 653, 657 (Sup.Ct. 1966); see Wilsey v. Gavett, 49 Misc.2d 861, 268 N.Y.S.2d 688, 691 (Sup.Ct.1965) (dicta); cf. Frummer v. Hilton Hotels International, Inc., 19 N.Y.2d 533, 538, 281 N.Y.S.2d 41, 45, 227 N.E.2d 851 (1967) (dicta).

Therefore, German Messer's motion to quash the summons and dismiss the amended third-party complaint for lack of jurisdiction is denied.

### Motion for Summary Judgment

German Messer also moves, pursuant to Rule 56, F.R.Civ.P., to dismiss the third-party complaint as a matter of law, contending that Travelers has no right of subrogation against German Messer under the policies because German Messer is an insured contractor or subcontractor within the meaning of the policies. German Messer contends that it constructed the rectification columns independently and without supervision and therefore was acting directly pursuant to the contract between American Messer and Airco.

However, Travelers contends that the question of German Messer's status cannot be decided on motion papers; and that a clear issue of fact as to the intent of the parties and the meaning of the insurance policies is presented here. Alternatively, Travelers contends that German Messer cannot be a subcontractor since it did not perform any work at the construction sites and that it cannot be a contractor because it did not deal directly with the other party, Airco.

Under Rule 56, F.R.Civ.P., when, as here, contradictory inferences from a set of facts are urged, "the inferences to be drawn * * * must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); American Mfrs. M. I. Co. v. American Broadcasting-Para. Theaters, 388 F.2d 272, 279 (2d Cir. 1967); Mistretta v. S. S. Ocean Evelyn, 243 F.Supp. 86 (E.D.N.Y.1964). Further, when, as here, the intent of the parties is an issue, summary judgment should not be awarded. Consolidated Electric Co. v. United States, 355 F.2d 437 (9th Cir. 1966). The interpretation of the insurance policies and the status of German Messer thereunder raise issues of fact which cannot be resolved on this motion for summary judgment.

German Messer's motions, under Rule 12(b), F.R.Civ.P., to quash the summons and dismiss the third-party complaint for lack of jurisdiction, and under Rule 56, F.R.Civ.P., to dismiss the third-party complaint as a matter of law, are denied.

It is so ordered.