**HARRY WINSTON, INC., Plaintiff,**
v.
**Morton WALDFOGEL, Defendant.**
**No. 68 Civ. 1884.**

United States District Court
S. D. New York.
Oct. 22, 1968.

---

Royall, Koegel, Rogers & Wells, New York City, for plaintiff; William S. Greenawalt, New York City, of counsel.

Charnin & Weisman, Jamaica, N. Y., for defendant; Edwin N. Charnin, Jamaica, N. Y., of counsel.

## OPINION

MOTLEY, District Judge.

Plaintiff Harry Winston, Inc., (Winston), is a retail jeweler with its only offices in New York City. Defendant Morton Waldfogel is a resident of Swampscott, Massachusetts, and has never resided in the State of New York. Defendant apparently owns no property in New York and earns his living in Massachusetts. The parties agree that in the summer of 1964 Waldfogel visited Winston's New York outlet to examine diamond rings with a view to purchasing one for his wife. It is Winston's custom, when dealing with prospective purchasers of substantial reputation and means, to allow its rings to leave the store with the customer "on memorandum". The rings taken on memorandum by Waldfogel to Massachusetts in 1964 were subsequently returned when defendant found a suitable ring elsewhere for his wife. Rings taken on memorandum remain the property of Winston, and the customer assumes the liability of an absolute insurer for their safe return.[1]

Waldfogel had no further contact with Winston until the summer of 1967. On July 6, 1967, Waldfogel visited Winston's New York store again and "discussed with their salesman, Mr. Jack Raticoff, the purchase of a diamond ring for [his] wife."[2] The ring he had found in 1964 had been stolen. Winston allowed him to take a 13.39 carat diamond ring back to Massachusetts on memorandum. Waldfogel returned this ring by mail on July 13, 1967, for sizing, and it was immediately sized and mailed back. Several days later Waldfogel telephoned to say his wife wanted a "better-shaped" ring. Winston had just designed a 14.37 carat, pear-shaped diamond ring (not on Waldfogel's order), and this ring was mailed to defendant on July 25, 1967, on memorandum.[3]

On August 31, 1967, Waldfogel returned to Winston's New York store for a third time "bringing the two rings with him in his pocket."[4] It is undisputed that the 13.39 carat ring was returned at this time. Plaintiff's brief

1. The memorandum states: "The goods described and valued as below are sent for your examination and remain the property of HARRY WINSTON, INC., or consignor, and are to be returned on demand. Title shall not pass nor shall sale be effected until you have notified us of your agreement to pay the indicated price and we have indicated our acceptance thereof by sending you a bill of sale. Title shall then pass only to the articles so billed. In consideration of the delivery of said property to the undersigned the undersigned assumes full and unqualified responsibility for the absolute return of said property on demand without any excuse or defense whether for accident or any other cause mentioned or not, such obligation assumed being that of absolute insurer."

2. Waldfogel's moving affidavit, p. 1.

3. Copies of the three memoranda slips involved are appended to Raticoff's affidavit as Exhibits B, C, and E.

4. Raticoff affidavit, p. 4.

states that the parties then negotiated over the price of the 14.37 carat ring.[5] There is no support for this assertion in any of the affidavits submitted. Mr. Raticoff's affidavit states only that both rings were in Waldfogel's possession in the store. Defendant's brief states that Mrs. Waldfogel may have had the 14.37 carat ring at this time,[6] although the affidavits are silent on her whereabouts during this trip. At any rate, Waldfogel does not deny Raticoff's assertion that the 14.37 carat ring was also in his pocket during this visit, and affirms it insofar as he states that this visit was as described in the Raticoff affidavit.[7] The briefs are not sources of evidence, and on the affidavits the court takes it as proven merely that Waldfogel did have possession of the 14.37 carat ring on this trip.

Waldfogel returned with the 14.37 carat ring to Massachusetts. From here, the facts as they are stated in the opposing affidavits conflict. Plaintiff's affidavit states that the terms of a purchase of the ring were discussed in several telephone calls in September, culminating with a call on September 22 in which it was agreed that the ring be sold for $53,500 to Waldfogel.[8] The affidavit also states that an invoice showing the sale of the ring was then mailed to Waldfogel along with a letter expressing appreciation for the purchase and an insurance appraisal of the ring.[9] Copies of these items are appended to the affidavit as Exhibits H, I, and J. Plaintiff's affidavit also states that repeated efforts to collect the purchase price were made in the fall and winter, and copies of letters of plaintiff to defendant demanding payment are appended to

the affidavit as Exhibits K–O. Waldfogel's affidavit denies that there was ever any agreement as to either the purchase of the ring or its price. It is undisputed that the ring was returned by mail to Winston in March of 1968.

■■ A complaint was filed in this District on May 9, 1968, demanding $53,500 from Waldfogel. The summons and a copy of said complaint were personally served upon Waldfogel on June 12, 1968, in Massachusetts by a Deputy Marshal of that District. Defendant has moved this court to dismiss the action for want of jurisdiction over the person of defendant. Such motion is permitted by Rule 12(b) (2), Fed.R. Civ.P. In the alternative he moves for change of venue to Massachusetts. Rule 4(d) (7), (e) and (f), Fed.R.Civ.P., allows for the service of summons outside the State of New York, and for the obtaining of personal jurisdiction over one so served, if done in accordance with the law of the State of New York relating to personal jurisdiction and service of summons. The parties and the court agree that the relevant New York law is § 302(a) (1), N.Y. CPLR [10]. The question for determination then is whether Waldfogel has transacted any business within New York out of which this cause of action has arisen. It is to be kept in mind that interpretations of this statute by the New York Court of Appeals are binding as final authority upon this court.

## I.

■ A preliminary problem is that of identifying the transaction to which § 302(a) (1) is to be applied. Waldfogel

---

5. Plaintiff's rejoinder brief, pp. 1–2, and answering brief, p. 3.

6. Defendant's reply brief, p. 7.

7. Waldfogel's second affidavit.

8. Raticoff's affidavit, p. 4.

9. Id. at 5.

10. § 302. Personal jurisdiction by acts of nondomiciliaries.
     (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:
       1. transacts any business within the state; * * *

argues that each of his three visits to Winston's New York store were separate and independent transactions, involving only the rings returned and picked up on the respective visits. Therefore, he argues, even if any of these visits, or all of them combined, were to constitute the transaction of business in New York, he would not be subject to personal jurisdiction under § 302(a) (1) because the 14.37 carat ring which is the subject matter of the alleged contract was never picked up or returned on these visits, but always transferred by mail, and the cause of action did not arise out of the transactions composed of these three visits or any one or two of them.

The court agrees that the 1964 visit cannot be part of the transaction involving the 14.37 carat ring. The purpose of that visit was complete when Waldfogel found the desired ring elsewhere. However, the court finds the transaction involving the 14.37 carat ring to be broad enough to encompass the two visits to New York in the summer of 1967, despite the fact that the 14.37 carat ring did not change hands on these visits. Waldfogel's avowed purpose was to purchase a diamond ring for his wife, and both visits, along with the mailing of the 14.37 carat ring, were in furtherance of this purpose. It is the common purpose which ties each of these acts into a single transaction. Therefore, if the two visits alone or in company with acts connected to the visits, are enough to satisfy the requirement of transaction of any business within New York, then the cause of action does arise out of an "act enumerated in this section" within the meaning of § 302(a), the act being that part of the single transaction involving the purchase of a diamond ring done within the State.

This broad view of the applicable transaction for purposes of § 302(a) (1) is supported by the New York Court of Appeals in Singer v. Walker, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965). Defendant in that case was an Illinois corporation manufacturing geologists' hammers. Plaintiff purchased one in New York and was injured when it broke while he was using it in Connecticut and a chip penetrated his eye. Jurisdiction over defendant in New York under § 302(a) (1) was sustained because of the shipping of substantial quantities of the hammers into New York as a result of solicitation through representatives, catalogues, and advertisements. The court held that "the cause of action asserted is clearly one 'arising from' the purposeful activities engaged in by the appellant in this State in connection with the sale of its products in the New York market." 15 N.Y.2d at 467, 261 N.Y.S.2d at 26, 209 N.E.2d at 82. Yet, on the interpretation of transaction contended for by Waldfogel, the cause of action might have been considered to arise from the isolated act of manufacture of the hammer, an Illinois act. The Court of Appeals rejected such an interpretation in viewing the relevant transaction as including the sale of all New York hammers and the solicitation of such sale. See also A. Millner Company, Inc. v. Noudar, 24 A.D.2d 326, 266 N.Y.S.2d 289 (1st Dept. 1966), where a cause of action for breach of an exclusive distributorship contract was related to New York sales and business on behalf of defendant by its officers; Iroquois Gas Corporation v. Collins, 42 Misc.2d 632, 248 N.Y.S.2d 494 (Sp. Term Erie Co. 1964), where a cause of action for breach of a construction contract by refusal to perform arose out of visits to New York by defendant's representatives to survey the construction site and negotiate a price.

Cases where the cause of action was not found to arise out of the transaction of business in New York are distinguishable because the business done in New York bore no relation to the transaction giving rise to a cause of action. See Harvey v. Chemie Grunenthal, 354 F.2d 428 (2d Cir. 1965), cert. denied, 384 U.S. 1001, 86 S.Ct. 1923, 16 L.Ed.2d 1015 (1966); Gelfand v. Tanner Motor

Tours, Ltd., 339 F.2d 317 (2d Cir. 1964); Kirkland v. Sapphire International Touring, Ltd., 262 F.Supp. 309 (S.D.N.Y. 1966).

The cause of action, then, may be considered to have arisen out of a single transaction encompassing the two 1967 visits to Winston's store and all mailings, and the question is narrowed to one of whether any of the acts constituting this transaction satisfy the statutory requirement of a transaction of any business in New York.

## II.

■ The parties seem to give importance to the place of making the alleged contract. It is clear under the cases that if the contract were entirely executed by both parties in New York, personal jurisdiction could be obtained on that basis alone under § 302(a) (1). Patrick Ellam, Inc. v. Nieves, 41 Misc. 2d 186, 245 N.Y.S.2d 545 (Sup.Ct. Westchester Co. 1963); Steele v. De Leeuw, 40 Misc.2d 807, 244 N.Y.S.2d 97 (Sp. Term Nassau Co. 1963). This, however, is not the case. Instead the contract, if indeed there is one, was executed in two states, either by telephone alone or by both telephone and mail. In such a situation this court deems it unimportant to place the contract in New York or Massachusetts for jurisdictional purposes. New York has explicitly held that the fact that the final act of execution of a mailed contract occurred in New York is in and of itself insufficient to confer jurisdiction. Standard Wire & Liquor Co. v. Bombay Spirits Co., 20 N.Y.2d 13, 281 N.Y.S.2d 299, 228 N.E.2d 367 (1967). See also Agrashell, Inc. v. Bernard Sirotta Company, 344 F.2d 583 (2d Cir. 1965) where it is suggested it would be unconstitutional to base jurisdiction solely on the place of the last act necessary to execution of a contract. Thus, even had Winston accepted a telephone offer in New York either orally or by mailing an invoice, this alone could not sustain jurisdiction.

■ Correlatively, the fact that the last act marking the formal execution of a contract occurs outside of New York, e. g., assuming Waldfogel accepted a telephone offer in Massachusetts, will not defeat jurisdiction under § 302(a)(1). Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 457, 261 N.Y.S.2d 8, 18, 209 N.E.2d 68 (1965). In fact, where there is an interstate telephone or mail contract, the place of the last act of execution is given little or no weight in determining whether any business has been transacted in New York. Jurisdiction under § 302(a) (1) was founded in Liquid Carriers Corporation v. American Marine Corporation, 375 F.2d 951 (2d Cir. 1967), solely upon negotiations conducted by defendant's vice president in New York, although the last act of execution of the contract also occurred in New York. See also Iroquois Gas Corporation v. Collins, supra. This is an understandable approach, for the wholly fortuitous circumstance of whether an offer comes from one end of a telephone line or the other, or of whether a contract is mailed last for signing into one state or another, does not seem a proper basis on which to found jurisdiction, either partially or wholly. The court, then, does not deem it relevant for jurisdictional purposes whether this contract is denominated a New York or a Massachusetts contract for choice of law purposes. See Agrashell, Inc. v. Bernard Sirotta Company, supra, 344 F.2d at 588.

■ Waldfogel denies that he ever entered into an agreement to purchase the ring, or an agreement as to a price. If no agreement is established, then, of course, Winston cannot recover anything. There is a factual dispute over the existence of a contract, which bears upon the question of ultimate liability. It must be determined whether this dispute need be resolved on this motion. If it must, then a hearing would have to be held which, in effect, would accelerate the trial of plaintiff's cause and determine its merit.

The problem was faced in Iroquois Gas Corporation v. Collins, supra; and

the court went ahead and established jurisdiction under § 302(a) (1) through the visits of two of defendant's employees to New York without passing upon the dispute over the existence of a contract. Similarly, in Buckley v. Redi-Bolt, Inc., 49 Misc.2d 864, 268 N.Y.S.2d 653 (Sp. Term, Rensselaer Co. 1966), the court found jurisdiction under § 302(a) (1) from the large scale shipment of bolts by defendant into New York and the advertising in New York for such bolts, although the defendant denied his bolt caused the injury. If his bolt had not caused the injury, jurisdiction would have been improper because the cause of action would not have arisen from the transaction of business in New York. Yet, the court held plaintiff need merely show enough to warrant jurisdiction if the dispute should be resolved for him on trial.[11] Finally, the Court of Appeals of the Second Circuit in interpreting under New York law a plaintiff's burden under § 302(a) (1) held in United States v. Montreal Trust Company, 358 F.2d 239, 242 (2d Cir. 1966), cert. denied, 384 U.S. 919, 86 S. Ct. 1366, 16 L.Ed.2d 440, rehearing denied, 384 U.S. 982, 86 S.Ct. 1858, 16 L.Ed.2d 693 (1966), that he need establish only prima facie the transaction of business in New York:

> "The District Court, in dealing with this issue at the preliminary hearing, we believe, placed a too heavy burden on the government in requiring it to establish a strong factual basis upon which jurisdiction is predicated in this case. At this early stage of the proceedings, the government should not have been required to submit proof which would, in effect, establish the validity of its claim—and its right to the relief sought. Rather, to bring § 302 into operation, and thereby invoke the jurisdiction of the District

Court, the government was required to establish only prima facie tax-related transactions of Klein in New York."

It might be pointed out that in establishing the contract, Winston is proving facts once removed from those involving the transaction of business, itself, in New York, since it is the two visits, mailings and related events which actually constitute that part of the transaction of business alleged to be done in New York. No one denies the visits and mailings. There is all the more reason for allowing a prima facie showing in this once removed area, since it is not the area upon which jurisdiction is directly pinned and is the area of ultimate liability.

In the two cases the court has found which suggested hearings on disputed jurisdictional facts, Agrashell, Inc. v. Bernard Sirotta Company, supra, 344 F.2d at 589, and A. Millner Company, Inc. v. Noudar, supra, the hearings were suggested because there was a factual issue as to whether defendant performed certain acts in New York, none of which involved the ultimate liability of defendants. This is not the case here, and Montreal Trust Company, supra, seems to question the procedure if it requires proof at more than a prima facie level. Winston certainly has made a prima facie showing of the existence of an oral contract. Its officer has described the background negotiations of the contract and its formation by telephone, and the exhibition of its business records indicate it certainly thought during the fall of 1967 that it had an agreement.

Winston's allegations of an agreement, in fact, show no defect on their face, unless it be that the agreement alleged is voided by § 2–201 of the

11. Id. 268 N.Y.S.2d at 657–658. "It is not required, for the purposes of this motion, to establish defendant's responsibility by the same degree of proof required upon the trial of the action. This dispute bears upon the question of ultimate liability, and in order to ascertain whether New York courts have jurisdiction, it is not necessary to determine the existence or theory of liability in advance of trial."

Uniform Commercial Code,[12] which requires a writing signed by the party against whom enforcement is sought in certain circumstances. The court finds Winston has made sufficient showing [13] that it comes within an exception to the requirement of a writing to carry him past the jurisdictional objection. Section 2–201(3) (c) of the Code validates an oral contract for goods of this price where the goods have been received and accepted. Section 2–206 says acceptance occurs when the buyer fails to make an effective rejection or does any act inconsistent with the seller's ownership. Winston would seem to have made a prima facie showing of acceptance. His affidavit and exhibits show that Waldfogel was on notice as of September 22, 1967, that plaintiff, at least, thought a contract for sale of the ring had been made. Repeated letters and telephone calls during the fall and winter from Winston affirmed the latter's position. Yet Waldfogel made no effort to return the ring until March of 1968, six months after notice of plaintiff's position. Waldfogel submits no evidence indicating he thought he held the ring on memorandum for those six months. The memorandum on which he obtained the ring stated that the mailing of the bill of sale would mean an agreement on purchase of the ring had been made.[14] Plaintiff's affidavit states it was mailed to defendant,[15] who does not deny receiving it. While the court has no evidence on how long a ring might remain on memorandum, it would seem that no such evidence could defeat this showing of acceptance. The court holds plaintiff's showing of a valid contract sufficient for the purposes of this motion.

### III.

It is undisputed that Waldfogel visited Winston's New York outlet twice in the summer of 1967 with the 13.39 carat ring, and that both this ring and the 14.37 carat ring, which is the subject matter of the alleged contract, were mailed into New York by defendant. The court has found all of these acts to be part of a single transaction along with the mailing of the 14.37 carat ring to defendant and has found the necessary threshold showing of a contract. The question is whether these acts in New York constitute the transaction of any business within the State upon which personal jurisdiction can be grounded under § 302(a) (1).

The New York Court of Appeals has set clear boundaries in its interpretation of § 302(a) (1) where the making of contracts is involved. Business is transacted in New York for jurisdictional purposes if the making of the contract is preceded by two months of preliminary negotiations in New York, a supplemental contract is executed in New York, the goods sold are shipped to New York subject to acceptance after delivery, and seller defendant's engineers supervise installation of the machines in New York. Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., supra. On the other hand, if the only contact with New York is shipment of the goods sold into the State, f. o. b. European ports, there is no jurisdiction under § 302(a) (1). Kramer v. Vogl, 17 N.Y. 2d 27, 267 N.Y.S.2d 900, 215 N.E.2d 159 (1966).

It is the massive gray area between these two extremes which the court must examine. The most recent Court of Appeals decision on point is relied upon heavily by Waldfogel. Contacts were found to be "infinitesimal" and jurisdiction lacking in McKee Electric Company v. Rauland-Borg Corporation, 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.

---

12. For purposes of this motion it matters not whether the agreement is a New York contract or a Massachusetts one for choice of law purposes. The relevant sections of the Uniform Commercial Code have been adopted by both states and are found in Book 62½ of McKinney's Consolidated Laws of New York and Chapter 106 of Annotated Laws of Massachusetts.

13. See two preceding paragraphs of opinion.

14. Footnote 1, supra.

15. Raticoff affidavit, p. 5.

2d 604 (1967). The defendant was an Illinois manufacturer of sonic equipment, selling less than 5% of its product to New York distributors. The latter mailed their orders to Chicago, where, if accepted, the goods were shipped f. o. b. Chicago. Defendant had an oral distributorship contract with plaintiff, which had been originally made seven years prior to suit in New York but which had been renewed yearly in Illinois. There was friction in New York between plaintiff and defendant's consulting engineers. Defendant sent a representative in late 1964 to New York to talk to plaintiff about this friction. Defendant's representative for the northeastern states, who had a New Jersey office, was also present. Six months later the defendant terminated the distributorship contract over this friction and plaintiff sued. In rejecting jurisdiction under § 302(a) (1), the Court of Appeals emphasized the facts of the *Longines-Wittnauer* case and that defendant's representative had spent "in total" less than a full working day in New York, supra, 283 N.Y.S.2d at 38, 229 N.E.2d 604.

The difficulty of fixing a standard to measure minimum jurisdictional contacts was recognized by the *McKee* court, supra, 283 N.Y.S.2d at 37, 229 N.E.2d 604, a difficulty illustrated by the problem the three dissenting judges had with the majority report. The court finds the *McKee* case distinguishable on two grounds. First, the contacts found insufficient in *McKee* involved the visit of defendant's representatives to talk with plaintiff about friction between plaintiff and the consulting engineers. They did not precede and culminate in the contract upon which the cause of action arose, as in the case before the court. The basic distributorship contract in *McKee* had been in existence for seven years, and there is nothing to indicate that the friction involved interpretation of the contract, although its existence ultimately caused the alleged breach of the contract. Defendant's representatives were not involved with the establishment of contractual relations with a New York resident. See General Turbine Corp. v. Helwig Carbon Products, Inc., 29 A.D.2d 1047, 289 N.Y.S.2d 912 (4th Dept. 1968). The *McKee* contacts were not purposeful acts in relation to the contract sued upon, Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., supra, 261 N.Y.S.2d at 18, 209 N.E.2d 68.

Second, the fact that less than a full working day of time spent in New York failed to satisfy the *McKee* court does not mean one day is a minimum for all jurisdictional contact under § 302(a) (1). The *McKee* case involved commercial relations between incorporated businesses. More time is probably always spent in the resolution of such commercial problems than in the resolution of a commercial business problem between retailer and customer. Two visits by a customer to a retail outlet are probably as much contact as one can ever expect between retailer and customer. See Northland Paper Company v. Mohawk Tablet Company, 271 F.Supp. 763, 768–769 (S.D. N.Y.1967). Defendant argues that the very fact that this is a business transaction between retailer and customer calls for a more limited application of § 302(a) (1). He cites no authority for this proposition and the court finds no merit in it. One lower court decision in New York, Willis v. Willis, 42 Misc.2d 473, 248 N.Y.S.2d 260 (Sp. Term New York Co. 1964) for a time cast doubt on whether transaction of business included separation agreements between spouses. Later lower court decisions, including one appellate decision, have cast doubt on this holding. Kochenthal v. Kochenthal, 28 A.D.2d 117, 282 N.Y. S.2d 36 (2d Dept. 1967); Raschitore v. Fountain, 52 Misc.2d 402, 275 N.Y.S. 2d 709 (Sup.Ct. Monroe Co. 1966); Todd v. Todd, 51 Misc.2d 94, 272 N.Y.S. 2d 455 (Sp. Term Nassau Co. 1966). At any rate, the sale of something by retailer to customer is certainly "business" and is as much "commercial" as dealings between giant corporations

whatever the status of the law as to separation agreements. The court finds two visits to a retail store in these circumstances to be sufficient time-wise to sustain jurisdiction and to distinguish this case from *McKee*.

It remains to be seen whether the character of these visits also satisfies the requirements of § 302(a) (1). The character has been seen to be different from that in the *McKee* case. See also Friedr. Zoellner Corporation v. Tex Metals Company, 396 F.2d 300 (2d Cir. 1968). It involves visits prior to the formation of any contract, the object being the determination of the subject matter of the contract. As such, these visits were actually part of the negotiation of a contract. Taking a ring on memorandum and returning it are in essence but steps in settling upon the principal term in a contract, the identity of the item to be sold. See Northland Paper Company v. Mohawk Tablet Company, supra.

Negotiations in New York for a contract later executed partially in Louisiana and partially in New York were held in themselves sufficient to sustain jurisdiction under § 302(a) (1) in Liquid Carriers Corporation v. American Marine Corporation, 375 F. 2d 951 (2d Cir. 1967). The contract was for the construction of a barge for plaintiff by defendant in its New Orleans shipyard. Defendant's vice president had negotiated the contract at five or six meetings in New York from March 4–8 and at a final meeting there on March 29. The ship was to be delivered to plaintiff in the New Orleans shipyard. The court feels this case does the most to fill in the gray area relevant to the problem presented by the instant motion. Negotiation of a contract as a measure of the transaction of business in New York is presented by both suits, each involving an action on the contract negotiated. It is true that the period of negotiation in *Liquid Carriers* was longer than that in the suit before this court, but as has been stated above, the time difference can be explained by the differing types of commercial business involved. Negotiations of necessity are more complicated and prolonged when two corporations discuss the building of a barge than when one man buys a ring for his wife. The two visits of Waldfogel to Harry Winston, Inc., are of the same significance in the negotiation of the contract for sale of the ring as the six or seven meetings were in the negotiation of the contract to construct a barge. The visits satisfy the statutory test set forth in the *Longines-Wittnauer* case, 15 N.Y.2d at 457, 261 N.Y.S.2d at 18, 209 N.E.2d at 75, that there be "purposeful acts performed by the [defendant] in this State in relation to the contract, albeit preliminary or subsequent to its execution."

Winston also argues that Waldfogel's mailing of the two rings into New York is the transaction of business in New York. Waldfogel by agreement in the memorandum upon which the ring was taken [16] was an absolute insurer of the ring's safe return. Since he bore the risk of loss, the argument goes, he had a proprietary stake in the safe operation of the transporting vehicle in New York and was enjoying the benefits and protection of New York law. Waldfogel answers that Kramer v. Vogl, supra, disposed of this argument in New York by holding that mere shipment of goods into New York cannot support jurisdiction under § 302(a) (1). The court notes, however, that the goods in the *Kramer* case were shipped f. o. b. European ports and the risk of loss, assuming the applicability of Uniform Commercial Code principles, was therefore on the New York buyer in Europe. Winston receives case law support for his argument in Agrashell, Inc. v. Bernard Sirotta Company, supra, but the court makes no decision on the sufficiency of this argument for sustaining jurisdiction since it holds the two

---

16. Supra, footnote 1.

visits of Waldfogel to be in themselves sufficient to sustain jurisdiction under § 302(a) (1).[17] The motion to dismiss under Rule 12(b) (2), Fed.R.Civ.P., is denied.

Defendant moves in the alternative to transfer venue to Massachusetts. The court cannot see that defendant's inconvenience in trying the case in New York is in any way greater than plaintiff's would be if the case were tried in Massachusetts. The court exercises its discretion under 28 U.S.C. § 1404(a) so as not to deprive plaintiff of his choice of forum and denies this motion.

---

**17.** The court finds no merit in defendant's argument that sustaining this jurisdiction would be in violation of the Fourteenth Amendment. The U. S. Supreme Court's latest pronouncement indicates due process is satisfied if the non-resident purposefully avails himself of the privilege of conducting activities within the forum state, thereby invoking the privilege and benefits of its laws. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Waldfogel's actions satisfy this test.