A. MILLNER COMPANY, INC., Respondent, *v.* NOUDAR, LDA., Appellant.

First Department, January 11, 1966.

*Frank O. Fredericks* of counsel (*Frank & Fredericks,* attorneys; *Frank O. Fredericks* and *Lawrence W. Pollack* on the brief), for appellant.

*Martin C. Seham* of counsel (*Kopple & Seham,* attorneys), for respondent.

WITMER, J. This is an appeal from an order denying defendant's motion to dismiss the complaint for lack of jurisdiction. The action is brought to recover damages for an alleged breach of contract by the defendant, a Portuguese corporation. Jurisdiction is dependent upon New York's new "long arm" statute, specifically CPLR 302 (subd. [a], par. 1) which provides as follows:

"(a) Acts which are the basis of jurisdiction. A court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, as to a cause of action arising from any of the acts enumerated in this section, in the same manner as if he were a domiciliary of the state, if, in person or through an agent, he:

"1. transacts any business within the state".

Before the enactment of this statute, effective September 1, 1963, plaintiff brought suit against this defendant for the same relief herein sought; and the action was dismissed upon the ground that the defendant was not doing business in this State. In opposition to this motion to dismiss, the plaintiff has set forth in its affidavits facts tending to show that the defendant was doing some business in New York. Since no appeal was taken from the decision dismissing the former action, that determination is *res judicata* herein (*Singer* v. *Walker,* 21 A D 2d 285, 287); and on this motion and appeal such facts are offered and may be considered only insofar as they may tend to establish that the defendant transacted some business in the State and that this action arises therefrom.

The facts in this case are that in early February, 1954, the defendant in Lisbon, Portugal sent a letter to the plaintiff in New York City offering to make the plaintiff its sole representative for the sale of its olives and other food products in the United States and Canada, it being stipulated that the plaintiff would not handle the sale of similar products of any other company, and that the plaintiff would receive a 3% commission

on all such orders it obtained for the defendant. The "pact" was to run for two years from January 1, 1954 and be extended for successive two-year periods unless and until terminated by six months' notice by either party to the other before the expiration of the term or any succeeding term. It was further provided that the "pact" would be considered approved upon defendant's receipt of a copy of said letter signed by the plaintiff. The plaintiff signed the letter and mailed it to the defendant, which received it in Lisbon; and the plaintiff proceeded to make sales pursuant to the contract until July, 1958 when the defendant cancelled it.

Plaintiff's affidavits in opposition to the motion indicate that during the life of the contract the plaintiff sold between $300,000 and $500,000 worth of defendant's products annually in the United States and Canada; that on some occasions officers of the defendant came to New York and with plaintiff's president "engaged in sales and transactions of business on behalf of the defendant"; that in addition to making sales for defendant, plaintiff bought barrels on behalf of the defendant in New York of the value of $100,000, and they were shipped from New York to Portugal in defendant's name; and that defendant paid for them out of "funds available to it in the United States." The plaintiff also asserts that during this period there have been "substantial quantities of goods and merchandise belonging to the defendant situated in this State."

The defendant denies that it had an office, bank account or employee in this State, and that at any time it maintained any stock of goods here. With respect to the purchase and shipment by the plaintiff of barrels in New York for the defendant, the defendant alleges that such acts were transactions outside the scope of the sales contract in suit, and at most would be evidence of doing business in New York, which is not an issue in this case (and, see, *Greenberg* v. *Lamson Bros. Co.,* 273 App. Div. 57).

The merits of the action are not before us at this time. (*Longines-Wittnauer* v. *Barnes & Reinecke,* 15 N Y 2d 443, 460.)

The question presented is whether the defendant transacted some business in New York with respect to the contract out of which this action arises. If the plaintiff were an employee of or an agent acting exclusively for the defendant, plaintiff's acts, in and of themselves, performed for the defendant in New York would suffice to establish jurisdiction of the action against the defendant. (*Schneider* v. *J & C Carpet Co.,* 23 A D 2d 103; and, see, *American Cyanamid Co.* v. *Rosenblatt,* 16 N Y 2d 621, cert. den. 382 U. S. 110.) But it is asserted and not denied

that the plaintiff is an independent broker representing many different companies on a commission basis, in no way under the defendant's control. In such circumstances the acts of the broker representative, the plaintiff herein, are not the acts of the so-called principal, and do not create a basis for jurisdiction against this defendant. (*Greenberg* v. *Lamson Bros. Co.,* 273 App. Div. 57, *supra*; *McKeon* v. *McGowan & Sons,* 229 App. Div. 568; and, see, *Sterling Novelty Corp.* v. *Frank & Hirsch Distr. Co.,* 299 N. Y. 208, 212; cf. *International Shoe Co.* v. *Washington,* 326 U. S. 310, 313 *et seq.*)

We must consider, therefore, (1) whether the mere mailing of the contract offer by the defendant to the plaintiff in February, 1954 constituted a sufficient act of business to subject it to the jurisdiction of our courts under CPLR 302 (subd. [a], par. 1) and, if not, (2) whether there is evidence of sufficient additional acts by the defendant in New York pursuant to said contract to subject the defendant to the jurisdiction of our courts.

We observe at the outset of this discussion that although traditionally a contract is deemed made when accepted, the acceptance of this contract by the plaintiff in New York was not an act of the defendant here (*Hanson* v. *Denckla,* 357 U. S. 235, 253). Under the circumstances of this case it is not significant that plaintiff mailed its acceptance from New York, nor that this writing, by the terms of the offer may not have become a formal acceptance until its receipt by defendant in Lisbon. (See *Longines-Wittnauer* v. *Barnes & Reinecke,* 15 N Y 2d 443, 457, *supra,* and note; *Agrashell, Inc.* v. *Bernard Sirotta Co.,* 344 F. 2d 583, 588; and 1965 Supplementary Practice Commentary by Joseph M. McLaughlin, McKinney's CPLR 302, p. 48 *et seq.*)

Mailing a contract into a State has been held a sufficient basis for the assumption of jurisdiction by the State with respect to life insurance policies. (*McGee* v. *International Life Ins. Co.,* 355 U. S. 220.) In the enactment of the CPLR the Legislature has not extended New York's jurisdiction to the utmost constitutional limit (*Longines-Wittnauer* v. *Barnes & Reinecke, supra*). We do not consider whether in the light of the *McGee* case New York could extend its jurisdiction over the parties to all commercial contracts effected by mailing into this State; nor whether the Legislature in its wisdom should extend such principle to all commercial contracts (see *Simonson* v. *International Bank,* 14 N Y 2d 281, 287). Enthusiasm for extending jurisdiction over foreign persons in foreign lands in limited contact cases, however, may well be tempered by the expectation that the same rule will be reciprocally applied in remote countries against our citizens here.

An examination of the history of CPLR 302 indicates that the Legislature has not made an extension of the insurance contract principle to all commercial contracts. The section was modeled upon and enacted after careful study of comparable section 17 of the Illinois Civil Practice Act (N. Y. Advisory Committee Report, N. Y. Legis. Doc., 1958, No. 13, p. 39; 1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 302.01). In that section of that act, subdivision (d) was enacted, as approved in principle by the *McGee* case, to give jurisdiction over foreign corporations " (c)ontracting to insure any person, property or risk located within this State at the time of contracting ". That provision was omitted from CPLR 302 for the reason that it was deemed unnecessary (see N. Y. Advisory Committee Report, N. Y. Legis. Doc., 1958, No. 13, p. 39; and 1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 302.07), because New York had previously enacted adequate provision, through section 59-a of the Insurance Law, for jurisdiction over foreign insurance corporations insuring New York residents. Using section 59-a of the Insurance Law as a pattern, the Legislature could readily have drafted a provision extending jurisdiction to all commercial contracts offered to and accepted by New York residents in New York, had it wished, subject, of course, to any possible constitutional objection. But the obvious care with which the new section was drafted makes it clear that the Legislature did not intend to extend the *McGee* principle to commercial contracts generally. (See *Longines-Wittnauer* v. *Barnes & Reinecke*, 15 N Y 2d 443, 460, *supra*; *Insull* v. *New York, World-Tel. Corp.*, 172 F. Supp. 615, 628, affd. 273 F. 2d 166, cert. den. 362 U. S. 942.)

Finally, we consider whether the defendant did other acts in New York in relation to the contract in suit, which constitute the transaction of some business in New York. Just as the mere mailing of the proposed contract to New York for acceptance and return did not constitute the transaction of business by the defendant in New York, so also the mere shipping of its goods to purchasers in New York did not constitute the transaction of business in New York. (*Insull* v. *New York, World-Tel. Corp.*, 273 F. 2d 166, affg. 172 F. Supp. 615; *Grobark* v. *Addo Mach Co.*, 16 Ill. 2d 426.)

The plaintiff asserts, however, that the defendant maintained funds in New York and stored substantial quantities of goods and merchandise here, thus submitting itself to the protection of our laws. If that be true, and if the goods and merchandise were stored in connection with the contract in suit, that would afford ground for assumption of jurisdiction under CPLR 302

(subd. [a], par. 1). These claims are denied by the defendant, however; and reliance may not be had thereon for jurisdictional purposes unless they are established upon a hearing after remand. (See *Fremay* v. *Modern Plastic Corp.*, 15 A D 2d 235; *Agrashell, Inc.* v. *Bernard Sirotta Co.*, 344 F. 2d 583, 589, *supra*; 1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 302.09.)

The transaction of business has been defined in this manner: " In the broadest sense, a piece of business is transacted within this State when an individual or corporation is within or enters this State in person or by agent and, through dealing herein with another, effectuates or attempts to effectuate herein a purpose directly related to his economic affairs or, if a corporation, to its corporate ends." (*Insull* v. *New York World-Tel. Corp.*, 172 F. Supp. 615, 628–629, affd. 273 F. 2d 166, cert. den. 362 U. S. 942.) The undenied acts of defendant's officers in New York in defendant's behalf in furtherance of the performance of the contract constituted the transaction of business within this State in connection with the subject of this action, and within the meaning and intent of CPLR 302 (subd. [a], par. 1), so as to confer jurisdiction of this action upon the courts of New York. (*Kropp Forge Co.* v. *Jawitz*, 37 Ill. App. 2d 475 [1962]; *National Gas Appliance Corp.* v. *AB Electrolux*, 270 F. 2d 472; and, see, *Agrashell, Inc.* v. *Sirotta Co.*, 344 F. 2d 583, 588, *supra*; and *American Cyanamid Co.* v. *Rosenblatt*, 16 N Y 2d 621, cert. den. 382 U. S. 110, *supra*.) We hold, therefore, that the defendant is subject to the jurisdiction of this court.

Accordingly, the order appealed from should be affirmed, with costs and disbursements to the plaintiff-respondent.

BREITEL, J. P., VALENTE, McNALLY and STEUER, JJ., concur.

Order entered on July 22, 1965, unanimously affirmed, with $30 costs and disbursements to the respondent.