**FRIEDR. ZOELLNER (NEW YORK) CORPORATION, Plaintiff,**

v.

**TEX METALS COMPANY, Defendant.**

**No. 67–Civ. 1722.**

United States District Court
S. D. New York.
Nov. 14, 1967.

Garfield, Solomon & Mainzer, New York City, for plaintiff; by Elliott J. Solomon, New York City, of counsel.

Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, for defendant; by Lawrence J. McKay, Thomas F. Curnin, New York City, of counsel.

CROAKE, District Judge.

### MEMORANDUM

This is a motion by the defendant, Tex Metals Company (TEX METALS) for an order pursuant to Rule 12(b) (2), Fed.R.Civ.P., setting aside service of process and dismissing the complaint on the ground that this court lacks jurisdiction over the person.

The action, which alleges breach of a joint venture agreement between TEX METALS and Friedr. Zoellner Corporation (ZOELLNER), was first instituted in the Supreme Court of New York County. The summons and complaint were served on TEX METALS in Corpus Christi, Texas, on April 3, 1967. On May 2, 1967 the defendant removed the action to this court on the ground of diversity of citizenship, pursuant to 28 U.S.C. § 1441 (1964).

TEX METALS, a division of Western Metal Co. and a Texas corporation, is a broker of scrap iron, steel, and other metals. The material purchased by TEX

METALS is sold by them to independent distributors, mills and other purchasers. ZOELLNER is a New York corporation engaged in the business of importing and exporting metals and ores through various affiliates throughout the world.

At a convention of the Institute of Scrap Iron and Steel, Inc., held in Washington, D. C., in January 1966, the president of TEX METALS and the then vice-president of ZOELLNER discussed the possibility of entering into an agreement concerning the purchase and resale of certain scrap metals. It is clear from the affidavits of the parties that they had done business intermittently before these discussions and were apparently satisfied with these prior dealings.

In February 1966 an agreement was reached over the phone between the two companies. This apparently occurred after several preparatory calls preceding the call in which agreement was reached. The terms of the agreement were oral and never reduced to writing. The agreement reached was not an exclusive dealing arrangement and the affidavit of the president of TEX METALS states that less than 3 percent of TEX METALS' total tonnage business was done with ZOELLNER. Under the terms of the agreement, TEX METALS was to purchase copper in the United States and ship it in customs bond to the free trade zone in New Orleans. Material not designated for immediate shipment was stored in the zone in facilities rented by TEX METALS. ZOELLNER was to arrange for subsequent shipment of the stored material to its customers throughout the world.

Profits were to be divided evenly between the two contracting parties. Material purchased by TEX METALS was to be invoiced from Corpus Christi, Texas, to ZOELLNER in New York. As the material was sold and shipped from New Orleans, an invoice from ZOELLNER would be forwarded to TEX METALS with the purchaser's name blacked out showing the total sales price of the goods.

Periodically, TEX METALS' auditors would make an accounting of the joint venture from its inception. This accounting would include a profit and loss summary with supporting schedules and a closing inventory valuation with calculations such as closing inventory costs, purchasing costs, processing costs, and the like. In the month of July 1966, it became apparent to ZOELLNER that part of the New Orleans inventory was missing so that ZOELLNER had paid for materials which they could not sell for the benefit of the joint venture. In October 1966 ZOELLNER'S records indicated scrap metal having a market value of between $25,000 and $35,000 was missing from the New Orlean warehouse.

Because of this and other discrepancies between ZOELLNER'S and TEX METALS' accounts, a meeting was held in New York City. This meeting took place in ZOELLNER'S offices in the latter part of November. After this meeting a proposal to end the joint venture was submitted by TEX METALS on December 5, 1966, but it was not approved. Since that time, TEX METALS has refused to honor requests to ship the remaining copper in stock in their warehouse, prompting ZOELLNER to bring this suit.

The jurisdiction of a federal district court over a removed action under 28 U.S.C. § 1441 (1964) depends upon the jurisdiction of the state court before removal. If the state court lacked jurisdiction, the federal court acquires none. Lambert Run Coal Co. v. Baltimore & O. R.R. Co., 258 U.S. 377, 382, 42 S.Ct. 349, 66 L.Ed. 671 (1922); Venner v. Michigan Cent. R.R. Co., 271 U.S. 127, 131, 46 S.Ct. 444, 70 L.Ed. 868 (1926); Liquid Carriers Corp. v. American Marine Corp., 375 F.2d 951 (2d Cir. 1967). Therefore, we turn to state law to see if under New York law jurisdiction may be obtained. See Arrowsmith v. United Press International, 320 F.2d 219, 6 A.L.R.3d 1072 (2d Cir. 1963).

First, jurisdiction may be had over a foreign corporation if it is doing business in New York. See § 301 N.Y. C.P.L.R; Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915 (1917).

As the plaintiff seems to agree that the defendant was not doing business within the meaning of the New York law, we turn to consider plaintiff's contention that the defendant is subject to the jurisdiction of the New York courts under § 302 N.Y.C.P.L.R.—the long-arm statute.

ZOELLNER contends that § 302, N.Y. C.P.L.R.[1] gives this court jurisdiction over TEX METALS because it conducted business within this state and the action arose out of this transaction of business. It further contends that TEX METALS has committed a tort without the state expecting its acts to have consequences in New York and derives substantial revenue from interstate or international commerce. This contention seeks to take advantage of the 1966 amendment to the C.P.L.R. extending the jurisdiction of the New York courts to torts committed without the state. See § 302(a) (3) (ii) N.Y.C.P.L.R.

, We deal first with the contention that TEX METALS was transacting business within New York. ZOELLNER states that by commencing the joint venture TEX METALS can be said to have purposefully availed itself of the privilege of conducting activities within New York and thus has subjected itself to in personam jurisdiction. See Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965); International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ TEX METALS maintains no offices, bank account, telephone listing or warehouse for the storage of goods here, nor does it employ any salesmen, solicit any orders, make any sales or conduct any shipping activities in New York. The fact that a contract was negotiated over the telephone with one of the contracting parties present in New York is insufficient to confer jurisdiction on the New York courts. See M. Katz & Son Billiard Products, Inc. v. G. Correale & Sons, 26 A.D.2d 52, 270 N.Y.S.2d 672 (1st Dept. 1966); Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583 (2d Cir. 1965).

ZOELLNER also contends that its own activities in New York are sufficient under § 302 N.Y.C.P.L.R. to confer jurisdiction on this court. However, it has been held that for such an argument to prevail it must be established that the relationship which existed was one of exclusive agency. Standard Wine & Liquor Co. v. Bombay Spirits Co., 25 A.D. 2d 236, 268 N.Y.S.2d 602 (1st Dept. 1966), aff'd, 20 N.Y.2d 13, 281 N.Y.S. 2d 299, 228 N.E.2d 367 (1967); A. Millner Co. v. Noudar, L.D.A., 24 A.D. 2d 326, 266 N.Y.S.2d 289 (1st Dept. 1966). The fact that this is a joint venture does not in itself confer in personam jurisdiction on the New York courts. The analogy to a partnership situation where the presence of a partner in the state subjects the partnership to in personam jurisdiction is not apt. The rule there is for the benefit of third parties who might have been led by the presence of that partner to believe the partnership was doing business within the state and does not apply when an internal problem arises between the joint venturers. See Balogh v. Rayner-Smith, 51 Misc.2d 1089, 274 N.Y.S.2d 920 (Supp.Ct.N.Y.Co.1966). See also Hertz, Newmark & Warner v. Fischman,

---

1. Section 302 N.Y.C.P.L.R. in relevant part provides:
"[a] * * * As to a cause of action arising from any of the acts enumerated in this action, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:
1. transacts any business within the state; or
* * * * *

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
* * * * *
(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce * * *."

53 Misc.2d 418, 279 N.Y.S.2d 97 (Civ.Ct. N.Y.1967).

■ Having decided that the defendant was not transacting business within New York, we now turn to the plaintiff's contention that a tort has been committed so as to subject the defendant to the personal jurisdiction of this court under § 302(a)(3)(ii) N.Y.C.P.L.R. The complaint does not state that the defendant converted the goods in question. However, under the liberalized rules for pleading in New York and under the Federal Rules, all that must be pleaded is a claim upon which relief may be granted. The complaint is therefore treated as if it alleged the tort of conversion.

■ We do not believe that the situs of the injury complained of is New York. The New York Civil Practice Law and Rules were amended in 1966 to permit jurisdiction over a nondomiciliary who commits a tortious act without the state causing injury to persons or property within the state. In the present case, both the alleged tort of conversion and its resultant injury occurred in New Orleans. See e. g., Rose v. Sans Souci Hotel, Inc., 51 Misc.2d 1099, 274 N.Y.S.2d 1000 (Sup.Ct. Nassau 1966). Simply because the plaintiff is a resident of New York and bank accounts located in New York are likely to reflect the injury suffered in New Orleans is not sufficient reason to empower the New York courts to exercise jurisdiction. Were this the case, the New York courts would be exercising jurisdiction over a party who had no real connection with that forum. While the United States Supreme Court has opened broad and previously unavailable areas for the exercise of jurisdiction over nondomiciliaries, all restrictions on a state court's exercise of personal jurisdiction over foreign corporations have not been

lifted. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1957). The defendant must have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The sensible test suggested in Hanson v. Denckla, supra, allows a state court to take jurisdiction when the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. In the instant case the defendant had no such contacts with New York. On the other hand, ZOELLNER entered into this agreement knowing that the scrap metal would be stored in New Orleans and that none of the business of the joint venture would be conducted in New York. The New York long-arm statute was not intended to cover situations such as this present controversy but was designed instead to cover cases where products purchased or manufactured in another jurisdiction caused injury in *New York*. Wilcox v. Pennsylvania R.R. Co., 269 F.Supp. 326 (S.D. N.Y. 1967); see Supplementary Practice Commentary, McKinney's Consolidated Laws, Book 7B, § 302, where the commentator suggests the amendment was designed to change the results in Feathers v. McLucas, 15 N.Y.2d 443, 261 N. Y.S.2d 8, 209 N.E.2d 68 (1965), and Harvey v. Chemie Grunenthal G.m.b.H., 354 F.2d 428 (2d Cir. 1965). Here it is clear that the injury alleged took place in New Orleans and the plaintiff should pursue any remedy it might have in the courts of Louisiana, or in Texas, the domicile of the defendant.

In accordance with the foregoing the motion to dismiss is granted.

So ordered.