**ORIENT MID–EAST LINES, INC., owners of the S. S. ORIENT LINER, Plaintiff,**

**v.**

**ALBERT E. BOWEN, INC., General Motors Corporation, and Blackwood Hodge (India) Pvt. Ltd., Defendants.**

**No. 65 Ad. 1146.**

United States District Court
S. D. New York.

Feb. 24, 1969.

Joseph Cardillo, Jr., by Thomas Doyle, New York City, for plaintiff.

Patterson, Belknap & Webb, by Richard G. Moser, and William MacArthur, New York City, for Blackwood Hodge (India) Pvt. Ltd.

Edward B. Wallace, by John J. Higgins, New York City, for General Motors Corp.

Haight, Gardner, Poor & Havens, John H. Cleveland, III, and John de P. Douw, New York City, for Albert E. Bowen, Inc.

## OPINION

TYLER, District Judge.

This motion to dismiss for lack of personal jurisdiction and insufficient service of process, Rule 12(b) (2) and (4), F.R.Civ.P., requires another decision in the interminable line of cases applying the New York long-arm statute, CPLR § 302. It was argued on September 17, 1968. On October 28, 1968, this court endorsed a memorandum on the motion papers narrowing the issues and directing depositions to be taken for appropriate resolution of the motion. Pursuant to that direction, counsel for movant, defendant Blackwood Hodge (India) Pvt. Ltd. ("Blackwood Hodge") proceeded to depose plaintiff through two witnesses, Lyras and Muladelis, and defendant Albert E. Bowen, Inc. ("Bowen") through witnesses Lobe and Bowen, Jr. On January 29, 1969, final briefs and the deposition transcripts were filed; thus, the jurisdictional questions are now ripe for decision.[1]

Orient Mid-East Lines, Inc. ("Orient") brought this suit to recover damages allegedly resulting from the breach of an oral contract to ship ten dump trucks on an Orient vessel. The defendants are Bowen, the freight forwarder, General Motors Corporation ("GM"), the seller of the trucks, and Blackwood Hodge, which acted for the purchaser in seeing that the trucks were shipped from the United States to Calcutta, India. A copy of the amended complaint was served upon the appropriate official for Blackwood Hodge in New Delhi, India by local counsel for plaintiff in March, 1968.

After some initial confusion over the applicable provision of New York law, the parties have come to agree that CPLR § 302 is dispositive of this motion. Rule 4(e) and (f), F.R.Civ.P.; CPLR § 313. It was largely because of this early confusion that the aforementioned depositions and additional memoranda were required of the parties on the narrow issue of whether Bowen was Blackwood Hodge's "agent" (as the term is used in Section 302) in making the alleged shipping contract. As will be seen hereinafter, I evaluate the evidence and the applicable law, such as it is, to

---

1. Typically, the jurisdictional problem has helped to delay the progress of this case, filed in 1965. A powerful argument can be made for the proposition that delays in resolving these jurisdictional questions are caused by two judicially created phenomena: adherence to a factual case-by-case approach to "find" contacts of the defendant in the forum state and insistence that such factual issues be heard and resolved at a stage earlier than that when such issues are normally resolved in the litigation process. Cf. United States v. Montreal Trust Co., 358 F.2d 239, 242, 247–248 (2d Cir.), cert. denied 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440, reh. denied 384 U.S. 982, 86 S.Ct. 1858, 16 L.Ed.2d 693 (1966). Conceding that hardship in occasional, extreme cases might result if jurisdictional disputes were deferred until trial, this disability would be more than offset by the savings in court time and litigants' money.

compel an affirmative answer to that question.

Blackwood Hodge acts as a distributor in India for GM and other American manufacturers. In 1963 the Indian government placed an order for twenty-five dump trucks with GM through Blackwood Hodge, which order included a freight rate of $4,234.00 per truck. GM could not find a carrier willing to ship the trucks at that rate, and suggested to Blackwood Hodge that it deal directly with Bowen, with whom Blackwood Hodge had substantial previous dealings. (Lobe Dep., SM 33)

Blackwood Hodge initiated communications with Bowen on this matter, and a series of cables was exchanged, culminating in the following cable from Blackwood Hodge to Bowen, dated January 30, 1964:

REFERENCE 25 NOS 70TD REAR DUMPS GOVERNMENT OF INDIA SANCTION OBTAINED SHIP FORTY PERCENT THIS CONSIGNMENT E TEN UNITS BY NONCONFERENCE NON US FLAG VESSEL PLEASE ACCEPT THIS CONSIGNMENT FROM GENMOTORS SHIP ON OUR ACCOUNT AT RATES AGREED AND HANDOVER SHIPPING DOCUMENTS IMMEDIATELY TO GENMOTORS OVERSEAS OPERATION NEW YORK STOP ALSO REQUEST YOU APPLY US DEPARTMENT COMMERCE NECESSARY EXPORT LICENSE FOR DETAILS CONTACT BODIE GMOO NEW YORK.

Mr. Lobe, the Bowen employee who handled this business, made the disputed oral booking with Orient on the same day. (Lobe Dep., SM 26) The following day Lobe learned that GM would not release the trucks until it received a letter from Blackwood Hodge. For whatever reasons, the trucks were not ultimately shipped on an Orient ship, and plaintiff claims that the ship "sailed light", i. e., the ship's full capacity was not used.

As I understand it, Bowen expected to be compensated in this transaction in two ways: it would be paid "brokerage" by Orient and a forwarding fee by the shipper (GM). There is some doubt as to which party would ultimately bear the burden of paying the forwarding fee. (Bowen Dep., SM 16–20)

Virtually all the ties of the alleged contract to ship are to New York. Whatever two-sided negotiations there were (between Bowen and Orient) occurred here. The contract was made here, if at all. Performance by Orient was to begin here, and it can be inferred that the parties intended that payment would be made here.[2] On the basis of previous cases, it is clear that if the actions of Bowen are to be attributed to Blackwood Hodge, there is no question that the latter has "transact[ed] * * * business within the state", and that the asserted cause of action arose out of that transaction. CPLR § 302(a) (1); Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y.S. 2d 8, 209 N.E.2d 68 (1965); Liquid Carriers Corp. v. American Marine Corp., 375 F.2d 951 (2d Cir. 1967).

Thus, the only difficult legal issue is whether Bowen was the "agent" of Blackwood Hodge under Section 302(a).[3] The normal controversy under this section turns on the quantum and quality of actions by relatively ranking corporate officers. See, e. g., Liquid Carriers Corp. v. American Marine Corp., *supra;* Atlantic Steamers Supply Co. v. Inter-

---

2. Mr. Lyras, an agent of Orient, said that his firm would look to Bowen for its freight charge (Lyras Dep., SM 6), and Bowen is a New York business, as is Orient.

3. "§ 302. Personal jurisdiction by acts of nondomiciliaries.

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state; or * * *."

national Maritime Supplies Co., 268 F. Supp. 1009 (S.D.N.Y.1967). In several cases, each involving a dispute between a New York agent and a non-domiciliary defendant principal over an alleged agency contract, courts have indicated that the acts of non-exclusive agents will not be attributed to the defendant principals for Section 302(a) (1) purposes. Glassman v. Hyder, 23 N.Y.2d 354, 296 N.Y.S. 2d 783, 244 N.E.2d 259 (1968); Standard Wine & Liquor Co. v. Bombay Spirits Co., Ltd., 20 N.Y.2d 13, 281 N.Y. S.2d 299, 228 N.E.2d 367 (1967); A. Millner Co. v. Noudar, Lda., 24 A.D.2d 326, 266 N.Y.S.2d 289 (1st Dept. 1966).[4] See McKee Electric Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967). To my knowledge, this case is the first in which a third party (Orient) asks the court to exert jurisdiction over a defendant principal (Blackwood Hodge) because of acts in New York of an alleged agent (Bowen) of the non-domiciliary.

■ It should be immediately apparent that the words of the statute and considerations of public policy demand a different approach here than in cases between agent and principal. See Hertz, Newmark & Warner v. Fischman, 53 Misc.2d 418, 279 N.Y.S.2d 97, 100 (Civ. Ct.N.Y.C.1967); Friedr. Zoellner (New York) Corp. v. Tex Metals Co., 278 F. Supp. 52, 55 (S.D.N.Y.1967). See also, McLaughlin, Supplementary Practice Commentary, McKinney's Consolidated Laws of New York, CPLR § 302, 1968. Here there is a member of this state's business public dealing with a foreign concern through a local freight forwarder. I believe that the law does not require an exclusive agency in this situation, but merely that the principal request purposeful acts by a person in New York for the benefit of the foreign corporate defendant. Cf. United States v. Montreal Trust Co., *supra*, 358 F.2d at 254–255 (dissenting opinion).

■ The following specific facts belie the moving defendant's claim that Bowen was not its agent in this transaction.[5] Bowen received its information concerning the time, place, cargo, type of vessel (conference or non-conference, U.S. flag vessel or not), and the freight rate from Blackwood Hodge. The cable on which Mr. Lobe says he relied (Ex. R, quoted supra) is relatively clear when read in context with the other cables (Ex. A through Q) between Blackwood Hodge and Bowen. Its import is that Bowen was to make a booking for the dump trucks for the account of Blackwood Hodge. It is also clear that the transmittal of the trucks to India was part of Blackwood Hodge's corporate purpose *in* selling the trucks to the Indian government; in its bid to the Indian government it gave the freight rate of $4,234.00 per truck. Under all these circumstances, I conclude that for jurisdictional purposes Bowen was acting for Blackwood Hodge as an "agent" when it made the oral booking with Orient.

4. It should be noted that none of the defendant principals in these cases entered New York to negotiate or perform the agency contract sued upon. It is not surprising that the courts refused to base jurisdiction on the acts of the plaintiff agents, since those acts had nothing to do with the contracts sued upon. Compare Pallas v. Driv-Rite, Inc., 252 F. Supp. 582 (N.D.N.Y.1966), where a New York resident sued on an alleged distributorship contract with an Oklahoma corporation which sent agents into New York to negotiate the agency contract. I have no occasion to consider the validity of the principle enunciated as dicta in the cases cited in the text that the act of an exclusive agent might confer jurisdiction under CPLR § 302, *cf.* Schneider v. J & C Carpet Co., 23 A.D.2d 103, 258 N.Y.S.2d 717 (1st Dept.1965), a principle traditionally applied in certain Section 301 cases.

5. I do not presume to decide the substantive question of which, if any, of the defendants in this action should be responsible for any damages sustained by Orient. Although the factors to be discussed *infra* may be relevant to such inquiry at trial, the agency question on this jurisdictional motion may be substantially different from those questions which will confront the trial judge deciding the merits of this controversy.

Accordingly, this court has personal jurisdiction over Blackwood Hodge, and service of process was proper. Thus, that defendant's motion to dismiss and quash service of process is denied. It is so ordered.