**NATIONAL IRANIAN OIL COMPANY, Plaintiff,**

v.

**COMMERCIAL UNION INSURANCE COMPANY OF NEW YORK et al., Defendants.**

No. 71 Civ. 2332.

United States District Court, S. D. New York.

Aug. 14, 1973.

Lovejoy, Wasson, Lundgren & Ashton; New York City, for plaintiff by Douglas Foster, Jeffrey D. Saper, New York City, of counsel.

Gottesman, Wolgel & Smith, New York City, for defendant Commercial Union Ins. Co. of New York by Samuel Gottesman, New York City, of counsel.

Moore, Berson & Bernstein, New York City, for defendants P & F Industries, Inc. and Sidney Horowitz by Earle K. Moore, William M. Guttman, New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

This case arises out of two 1966 contracts * between the plaintiff National Iranian Oil Corp. (hereinafter "NIOC") and Torrance Machinery and Engineering, Inc. (hereinafter "TME"), a California corporation which was the predecessor to Kencol, Inc. The contract provided for the construction and management of two pipe mills in Iran. During the course of performance, several disputes arose, and after unsuccessful attempts to settle them, plaintiff brought this suit for breach of contract and fraud, alleging $24,598,000 damages.

Originally the suit was brought only against the Commercial Union Insurance Company (hereinafter "CUIC") for failure to pay the performance bond which accompanied the contract, but the plaintiff was later permitted to amend its complaint to add the other defendants and causes of action. Defendant P & F Industries is the parent corporation of which TME was, and Kencol, Inc. is, a wholly owned subsidiary. Defendant Sidney Horowitz is Chairman of the Board of P & F, and at the time the controversy arose was also President of P & F and a Vice-President of TME. As against the added defendants the complaint alleges that they (1) breached the contract in several respects; (2) imposed upon the plaintiff a performance bond which they knew would be difficult to collect, using the pressure of time to force plaintiff's acceptance; (3) transferred the assets of Kencol, Inc. to a limited partnership with the intent and effect of defrauding plaintiff; and (4) P & F and Horowitz ignored the corporate entity of TME and bilked it of assets to defraud creditors including the plaintiff.

Before the complaint was amended, defendant CUIC moved to transfer the case to the Central District of California pursuant to 28 U.S.C. § 1404(a). By stipulation, this motion was withdrawn on March 13, 1972, without prejudice to its being renewed following service upon the defendants of the amended complaint. On July 10, 1972, the defendants other than CUIC moved. (1) to dismiss the amended complaint as against Kencol, Inc. for lack of personal jurisdiction; (2) to dismiss the complaint as against all defendants other than CUIC for improper venue, or in the alternative; (3) to transfer the action to the Central District of California. NIOC responded to this motion by discontinuing the action as against Kencol, Inc. on August 23, 1972, and by opposing the transfer. Since all of the defendants other than Kencol, Inc. are residents of New York, the discontinuance rendered moot both motions to dismiss, leaving only the motion to transfer. Before this motion had been decided, the defendants other than CUIC moved on October 10, 1972, to dismiss the complaint for failure to join an indispensable party, i.e., Kencol, Inc. Thus the motions now before the Court are the motion to dismiss, pursuant to Rule 19, Fed.R.Civ.P., for failure to join an indispensable party and the motion to transfer this action to California, pursuant to 28 U.S.C. § 1404(a), for the convenience of parties and witnesses.

Rule 19(a) sets forth the considerations which govern the question whether a party is to be regarded as necessary and should therefore be joined:

"(a) Persons to be joined if feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over

---

* Hereinafter referred to collectively as "the contract".

the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

■ In this case, Kencol, Inc. claims an interest in defending against the allegations that it breached the 1966 contract. If these issues are determined in its absence, and CUIC and P & F or Horowitz are held liable for the breach, there is a real risk that an inconsistent result in a subsequent suit brought by one of them against Kencol, Inc. would prevent their being indemnified.[1] Under these circumstances Kencol should be joined if it is subject to service of process and if its joinder will not deprive the Court of subject matter jurisdiction.

Since jurisdiction in this case is based on diversity of citizenship between an Iranian plaintiff and New York defendants, it will not be affected by the joinder of a California defendant. The question whether Kencol, Inc. is subject to service of process is more difficult to resolve, and requires a detailed examination of TME's contacts with New York.

CPLR § 302(a) authorizes a court to exercise personal jurisdiction over a non-domiciliary as to a cause of action arising from his transaction of business in New York, either in person or through an agent. Since TME was a California corporation with no New York office, bank account, mailing address, telephone listing, salesmen or sales, its only jurisdictional contacts relevant to this case are the negotiations regarding the pipe mill contracts carried on in New York by its agents.

Before the contracts were signed, the defendants' chief negotiators were the defendant Sidney Horowitz and Charles Babbitt, the President of TME and a Vice-President and Director of P & F. Babbitt was based in California and Horowitz in New York. Although Horowitz usually identified himself as President of P & F, he signed the contract on behalf of TME. Since P & F was not a party to the contract, it is fair to infer that Horowitz was negotiating on behalf of TME as well as P & F.[2]

The negotiations commenced in early 1966, consisting first of correspondence conducted by TME through a London agent, followed by a two week visit to Iran by Babbitt in May. In June, Horowitz accompanied Babbitt on a second trip to Iran, and when Babbitt refused to continue negotiations and left, alleging bad faith on the part of NIOC, Horowitz stayed and negotiated further before returning to New York. Babbitt flew back to Iran in July for further negotiations, but again became outraged at what he perceived as bad faith on the part of NIOC and left between negotiating sessions without notice to anyone. Again Horowitz smoothed things over by sending a conciliatory cable from New York to Dr. Manushehr Eghbal, Managing Director of NIOC in Iran, explaining Babbitt's behavior and suggesting further negotiations. Subsequent telegrams between Horowitz and Eghbal resulted in a joint decision to hold a final and conclusive negotiating session in New York. Each side now claims that New York was selected to suit the convenience of the other, but this question

---

1. Kencol, Inc. asserts that another corporation has a claim against it which prevents P & F from simply reimbursing itself from Kencol's assets.

2. Formal authorization by the Board of Directors of TME for Horowitz and Babbitt to negotiate and sign a contract with NIOC did not occur until August 22, 1966, after they had already been negotiating for about six months.

need not be resolved for the purposes of this motion.

The parties met in New York from August 17 to August 20. P & F and TME were represented by Horowitz, John Preston (an officer and employee of P & F and a director of TME), Robert Wymer (an employee of TME) and Ronald Del Guercio (counsel to TME). Considerable progress was made, but after four days the negotiations were adjourned to Washington, D.C., to allow NIOC's representatives to keep appointments with representatives of the Export-Import Bank. Negotiations resumed in Washington on August 24, and the contracts were signed there on August 26 and 27, 1966.

The parties differ as to the importance of the New York negotiations. The plaintiff characterizes them as "long and extensive, often lasting until late into the evening" culminating in "agreement upon the essential terms and provisions of the design and construction contract ("Turnkey Contract"), including time of completion of each mill and quantity of pipe to be produced by each mill." (Abusaidi affidavit p. 5). The defendant emphasizes that no agreement was reached on at least eight "essential contractual terms," including time of completion and quantity of production, until the negotiations were resumed in Washington. The Court will not attempt to decide such disputed issues of fact on conflicting affidavits. Even if important terms remained undecided when the parties left New York. it is clear from the history of the negotiations that the New York session represented a turning point at which the parties for the first time reached sufficient agreement to leave little doubt that a final contract would actually be concluded.

When disputes arose in course of performing the contract, the defendants' efforts to settle them were again directed from New York. On April 7, 1969, Horowitz went to Iran with Kenneth Colmen, an Executive Vice-President of P & F, who had full authority to negotiate a settlement on behalf of TME. Like

Horowitz, Colmen was and is based in P & F's New York office. As representative of TME, Colmen drew up and was ready to sign an agreement settling differences between NIOC and TME. The negotiations failed, and on May 26, 1969, Colmen wrote from New York to the Iranian Ambassador in Washington explaining that TME's participation in the pipe mill project would cease unless some agreement could be reached. In July, a settlement meeting was held at NIOC's offices in New York at which Colmen represented both TME and P & F.

Taken together, the pre-contract and post-contract negotiations carried on in New York by Horowitz and Colmen on behalf of TME were sufficient to constitute transaction of business within the meaning of CPLR § 302(a)(1). The standards for determining how much contact with New York is required to constitute transaction of business have been developed by the New York Court of Appeals in a recent series of cases starting with Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965). In that case the defendant, an Illinois corporation had sent key officers to New York to discuss the terms of a cntract to sell specially designed machines to the plaintiff, a New York corporation. The contract was executed in Chicago but it recited that it was "a contract made in New York and governed by the law thereof." Thereafter, top level officers and engineers of the defendant twice came to New York to discuss problems regarding performance of the contract. Following further meetings in Chicago, a supplemental agreement was signed first by the defendant in Chicago and then by the plaintiff in New York. It stated that acceptance of the machines would be conditioned upon their meeting certain tests after installation in New York. The machines were then shipped to New York and two of defendant's engineers spent over two months in New York supervising the installation and testing of

the machines. The Court of Appeals held that in combination these activities of defendant in New York more than met the standard of transacting business.

*Longines-Wittnauer* left open the question of what constitutes the minimum contacts necessary for transaction of business. A companion case, Singer v. Walker, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), narrowed the question somewhat in holding that an Illinois company had "transacted business" by shipping substantial quantities of its products into New York as a result of solicitation there through a local manufacturer's representative and through catalogues and advertisements, thus subjecting itself to the jurisdiction of the New York courts in a tort action based on a defectively manufactured hammer. On the other hand, no transaction of business was found where a foreign defendant designated the New York plaintiff as a distributor of its goods in the United States and the plaintiff distributed goods amounting to one or two per cent of defendants' sales, but the defendant had no other contact with New York. Kramer v. Vogl, 17 N.Y.2d 27, 267 N.Y.S.2d 900, 215 N.E.2d 159 (1966).

In the spectrum thus established, it is clear that the case at bar falls closer to *Longines-Wittnauer* than to Kramer v. Vogl. The essential factor compelling this conclusion is the physical presence of defendant's officers in New York in furtherance of the contract. This factor has been repeatedly emphasized by the New York courts in deciding questions of personal jurisdiction over non-residents. In Standard Wine & Liquor Co. v. Bombay Spirits Co., 20 N.Y.2d 13, 281 N.Y.S.2d 299, 228 N.E.2d 367 (1967), for example, the defendant had never sent or maintained agents in New York, and the court accordingly found no jurisdiction. And in A. Millner Co. v. Noudar, Lda., 24 A.D.2d 326, 266 N.Y.

S.2d 289 (1966), where the defendant's officers had visted New York several times and engaged in sales, the court rested its finding of jurisdiction on "the undenied acts of defendant's officers in New York in furtherance of the performance of the contract." *Id.*, 266 N.Y.S.2d at 295.

Defendants rely heavily on McKee Electric Co. v. Rauland Borg Corp., 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967), where the Court of Appeals found no transaction of business but, in fact, that case is clearly distinguishable. There the contract by which the plaintiff became a distributor for the defendant's electronic equipment arose as follows:

"In 1957 plaintiff contacted one Bressler, a representative of several manufacturers of electronic equipment, and, through his intervention, became a distributor of defendant's wares in Westchester and some adjoining counties . . . [T]he proposal that McKee become a distributor of Rauland-Borg products was simply transmitted by Bressler to the home office in Chicago where, after investigation of McKee's suitability, the application for a distributorship was accepted. . . . No written agreement was ever executed and, when questions arose with regard to the exact area that plaintiff's distributorship was to cover, these questions were resolved by mail between the Chicago office of Rauland-Borg and McKee in New York." 20 N.Y.2d at 379–380, 283 N.Y.S.2d at 35–36, 229 N.E.2d at 605–606.

The McKee contract was not based upon any negotiations conducted by the defendant in New York.[3] When a dispute arose in 1964, the defendant sent the manager of its sound products division to visit McKee for "approximately two hours" as part of a trip which included a "number of distributors in Pennsylvania and New Jersey." 20 N.

---

3. Although the dissenting justices characterized Bressler as an "agent", the majority seems to have regarded him as an independent contractor.

Y.2d at 380, 283 N.Y.S.2d at 36, 229 N. E.2d at 606. He was accompanied by a Mr. Stillman, a representative for 13 northern states, whose home and office were in New Jersey, and who did pay several subsequent visits to the plaintiff in an effort to resolve the difficulties. These contacts were held insufficient to sustain jurisdiction. The majority emphasized that the original agreement lapsed at the end of a year and was renewed unilaterally by the defendant in Chicago, and that the total time spent in New York by the defendant's employees in connection with the case was less than a full working day.

The contract between NIOC and TME, on the other hand, was an elaborate written contract following substantial negotiations by TME's officers in New York. Furthermore, Horowitz and Colmen did not merely visit New York; they had permanent offices at P & F in Great Neck, New York, from which they supervised and conducted negotiations on behalf of TME. This case thus falls well within the standards for personal jurisdiction developed by the Court of Appeals in Longines-Wittnauer Watch Co. v. Barnes & Reinecke, *supra*, and Singer v. Walker, *supra*, and reiterated in McKee Electric Co. v. Rauland-Borg, *supra*.

■■ It is true that the New York long-arm statute has not often been applied to cases involving contracts to be performed entirely outside New York, but some authority can be found in Liquid Carriers Corp. v. American Marine Corp., 375 F.2d 951 (2d Cir. 1967), and Northland Paper Co. v. Mohawk Tablet Co., 271 F. Supp. 763 (S.D.N.Y. 1967). In *Liquid Carriers*, the Court of Appeals found long-arm jurisdiction over a Louisiana defendant in a dispute arising out of a contract to be performed in New Orleans, but which had been solicited and negotiated by the defendant in the course of several visits to New York. In *Northland Paper*, the contract, to be performed in New York and Illinois, was mostly negotiated by telephone, but the president of the defendant came to New York to negotiate the key element of price. In each case the court emphasized the substantive importance of the New York negotiations in concluding the contract, a factor which deserves equal emphasis in the case of the pipe mill contract. The fact that both of the cited cases were brought by New York plaintiffs, whereas NIOC is an alien, is not significant, since the long-arm statute is concerned only with the *defendant's* contacts with New York. Nor is it a matter of importance where the contract was actually executed. The New York courts have emphasized that the purposeful presence of defendant's agents in New York is of far greater significance than the fortuitous time or place of execution. A. Millner Co. v. Noudar Lda., *supra*, 24 A.D.2d 326, 266 N.Y.S.2d 289 (1966). Here TME's agents and officers, Colmen and Horowitz, were purposefully present in New York for an extended period of time.

For all of the above reasons, I conclude that Kencol, Inc. is subject to the jurisdiction of this Court and should be joined as a defendant.

■ There remains the question of whether the case should be transferred to California. The *forum non conveniens* statute, 28 U.S.C. § 1404(a) states:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The defendants other than CUIC argue that California is a more convenient forum than New York for the trial of this action. In support of their argument they have submitted a list of thirty-five witnesses who live in California and who cannot be subpoenaed or controlled by Kencol, Inc., because Kencol is no longer their employer. Plaintiff urges that as a one-third partner in the limited partnership which purchased substantially all of TME's assets in 1970, Kencol, Inc. could compel the attendance of those

witnesses who are still employed by the partnership. In addition, the plaintiff argues that its proposed witnesses, twenty-five or thirty of whom are now located in Iran or England and thirteen of whom are in New York, would be greatly inconvenienced by a trial in California, both because of the extra distance and because the plaintiff's only United States office is in New York. It therefore seems to me that the balance of convenience, as far as witnesses are concerned, tips only slightly, if at all, in favor of California.

The convenience of parties, on the other hand, would be decidedly better served by keeping the action in New York. NIOC, CUIC, P & F and Horowitz all have greater contacts with New York than California, although CUIC and P & F are both licensed to do business in California.

The defendants also allege that calendar conditions in the Central District of California are somewhat better than in the Southern District of New York. This factor is outweighed, however, by the plaintiff's having chosen New York as the forum in which to bring this action. As Judge McLean aptly phrased it:

"[I]t has been consistently held . . . that plaintiff's choice of a forum will not be disturbed unless the balance of convenience weighs heavily in favor of defendant." Franklin v. Blaylock, 218 F.Supp. 261, 262 (S.D. N.Y.1963), mandamus denied, Blaylock v. McLean, 319 F.2d 533 (2d Cir. 1963).

Since the balance of convenience in the case at bar is approximately equal, transfer to California would be inappropriate under the applicable standards. The motion to transfer is therefore denied.

The motion to dismiss the complaint for failure to join an indispensable party is likewise denied, since Kencol, Inc. is to be joined as a defendant.

So ordered.