**ROUND ONE PRODUCTIONS, INC., Plaintiff,**

v.

**GREG PAGE ENTERPRISES, INC., Albert Page and Dennis Page, Defendants.**

**No. CV–80–1936.**

United States District Court, E.D. New York.

Sept. 23, 1982.

Michael M. Perlman, Garden City, N.Y., for plaintiff.

Carroll, Chauvin, Miller & Conliffe, J. Bruce Miller, and N. Scott Lilly, Louisville, Ky., for defendants.

## MEMORANDUM OF DECISION AND ORDER

COSTANTINO, District Judge.

This action was commenced by the filing of plaintiff's complaint alleging wilful and malicious breach of contract, interference with contract, and seeking money damages, exemplary damages and costs. The defendants have moved to dismiss alleging lack of in personam jurisdiction or alternatively to transfer the venue of the action pursuant to 28 U.S.C. § 1404. For the reasons set forth below, the defendants' motions are hereby denied.

*Fact*

Plaintiff, Round One Productions, Inc., ("Round One") is a New York corporation, engaged in the business of packaging and promoting sporting events, including boxing matches. Defendant, Greg Page Enterprises, Inc. ("GPE") is a Kentucky corporation formed for the purpose of promoting and managing the boxing career of Greg Page, a heavyweight fighter, by and through the efforts of Albert Page and Dennis Page, Greg Page's father and uncle, who serve as co-chairmen of the Board of GPE and are named as co-defendants herein. In addition, during the events giving rise to this lawsuit GPE maintained a contractual relationship with a New York corporation, Butch Lewis Productions for the advancement of the career of Greg Page.

In their business capacities and for the purpose of exploring the potential for a business relationship, representatives of Round One and defendants met in New York City on two or more occasions over a period of several months. (The parties herein differ as to the exact dates of those meetings, which took place within the general parameters of October 1979 to April 1980.) On May 7, 1980 a contract for three boxing matches to be fought by Greg Page and promoted by Round One was entered into by the parties in Louisville, Kentucky. The first of these three matches was scheduled for and actually took place on May 16, 1980. Disagreements as to the disbursement of receipts following that fight led to the alleged breach which is the subject of the instant complaint.

*Discussion*

In determining the amenability of a foreign corporation to suit in federal court, the court is bound by the standards of the state in which that federal court sits, as

long as such standards meet the constitutional due process guarantees. *Arrowsmith v. United Press International*, 320 F.2d 219 (2d Cir.1963); *Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116 (2d Cir.1967), *cert. denied*, 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1968). Therefore, New York Law applies herein.

The New York long-arm statute, CPLR § 302(a)(1) provides:

(a) Acts which are the basis of jurisdiction. As to any cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; . . . .

Further, as recently reiterated by the U.S. Court of Appeals for the Second Circuit in *Mayes v. Leipziger*, 674 F.2d 178 (2d Cir. 1982), any exercise of in personam jurisdiction must satisfy the constitutional due process standard established by *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In that case the Supreme Court stated that "due process require[d] only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158 (*quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). Moreover, the New York Court of Appeals has interpreted § 302(a)(1) as extending jurisdiction over a nondomiciliary who "in person . . . transacts any business within the state" reaching a defendant that "purposely avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws.'" *McKee Electric Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967), *quoting Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283

(1958); *see Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 458, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965).

New York courts have further held that a consideration of the totality or combination of factors, rather than the presence or absence of any one factor, will be determinative of in personam jurisdiction under CPLR § 302(a). *See Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., supra; Parke-Bernet Galleries v. Franklyn*, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970); *McKee Electric Company, Inc. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967); *George Reiner & Co. v. Schwartz*, 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977).

█ In *Longines-Wittnauer, supra*, the New York Court of Appeals held that merely because the final agreement between the parties was not signed in New York did not constitute sufficient grounds for dismissal on the basis of lack of in personam jurisdiction. Over a two month period the parties in *Longines-Wittnauer* conducted negotiations in both New York and Chicago. Defendants visited plaintiffs' manufacturing plant in New York in connection with the contract for sale of specially designed machines. The original contract, although signed in Chicago, indicated the parties' choice of forum to be New York; a supplemental agreement was actually executed in New York. Defendant's machines were shipped to New York, and the machines were serviced by defendant's engineers in New York over a two month period. The court held that the defendant had sufficiently availed itself of New York law by its combination of activities within the state to permit the exercise of in personam jurisdiction under CPLR § 302(a). Also, where a defendant has entered the state, even for one day, to negotiate and execute the contract on which suit is eventually brought, § 302(a)(1) gives jurisdiction. *George Reiner & Co. v. Schwartz, supra*.

Contrastingly, in *McKee Electric Company, Inc., supra*, the court declined to exercise in personam jurisdiction in consideration of defendant's "infinitesimal" contacts

with New York, where a company representative of the defendant visited the plaintiff in his New York office. The contract between the parties concerned products used in New York. In addition, the parties' original negotiations, albeit leading to a lapsed agreement, not the contract which was the subject of the action, had taken place in New York.

In analyzing the degree to which the defendants herein transacted business in New York, the parties disagree as to the amount of business activity that occurred in the forum state. However, to satisfy the test of CPLR § 302(a)(1) it is required that the parties transacted business in New York, and that the present cause of action is derived from such transaction of business. It is noted that at this stage of the proceedings, all doubts raised by the affidavits submitted on such a motion are to be resolved in a light most favorable to the plaintiff. *See American Contract Designers, Inc. v. Cliffside, Inc.,* 458 F.Supp. 735 (S.D.N.Y.1978).

While both sides concede the existence of business related discussions in New York, the plaintiffs maintain that the meetings of February 14th and 16th, 1980, resulted in substantive proposals which formed the basis for the subsequent contract. Defendants contend that these meetings were primarily social occasions, preliminary in nature, and that they resulted in no specific proposals.

With these allegations on the part of the plaintiff, it is clear under New York law that sufficient grounds exist for the exercise of in personam jurisdiction over the defendants. The instant defendants' activities directed toward New York are sufficiently purposeful to be within the ambit of § 302(a)(1) in contrast to the situation of the defendants in *Mayes v. Leipziger, supra.* In *Mayes* the Second Circuit declined § 302(a)(1) jurisdiction asserted on the basis of the defendants' acts in person and through an agent in consideration of the following factors: the defendants never entered New York; they did not initiate the contact with individuals who were in New York; they were "solicited" by plaintiff's prior out-of-state attorney to take over plaintiff's representation; the relevant retainer agreement did not appear to have been "made" in New York; defendants were not to perform New York services, but only to represent plaintiff in California; the defendants, from California, reported to their New York client and sought the wherewithal (i.e. funds, authority, and information) by means of letters and calls to New York to perform their non-New York services. By contrast, in the instant action New York meetings took place which contemplated continuing New York activities of the parties.

In *National Iranian Oil Co. v. Commercial Union Insurance Company of New York,* 363 F.Supp. 129 (S.D.N.Y.1973), in personam jurisdiction was extended to a defendant having conducted preliminary negotiations in New York described by the plaintiff as "long and extensive":

> Even if important terms remained undecided when the parties left New York, it is clear from the history of the negotiations that the New York session represented a turning point at which the parties for the first time reached sufficient agreement to leave little doubt that a final contract would actually be concluded. *Id.* at 129.

Despite defendant Albert Page's contention that he came to New York to attend the World Boxing Council Convention and only fortuitously met Jeffrey Levine with whom he had two dinner meetings, it is sufficient that business was conducted, albeit over dinner. Indeed, the incidence of the second dinner two days after the first, followed by arrangements to meet in Kentucky, where further negotiations took place and the contract was signed, indicate a chain of business meetings of which the New York meetings were two links. *See Northland Paper Co. v. Mohawk Tablet Co.,* 271 F.Supp. 763 (S.D.N.Y.1967). Meetings which are partially social in nature, as well as meetings which merely create the likelihood of a more solid business relationship are a sufficient basis for the exercise of in

personam jurisdiction. *American Contract Designers, Inc., supra.* Therefore, this court need not reach the issue of whether the defendants' relationship with Butch Lewis and Butch Lewis Productions would additionally justify the exercise of personal jurisdiction under CPLR § 301.

The notions of due process are not offended by this court's conferring of jurisdiction over the defendants under § 302(a)(1). This court finds that the tests set forth in *Frummer, Gelfand* and *International Shoe* are satisfied in light of defendants' New York contacts regarding the promotion and furtherance of Greg Page's boxing career. Therefore, New York State is a permissible forum by both constitutional and judicial standards for the pursuance of this cause of action.

Having established that this court has jurisdiction over the parties, this court now addresses the defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a). *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 504, 67 S.Ct. 839, 840, 91 L.Ed. 1055 (1947). For the reasons set forth below, this motion is also denied.

In *Gulf Oil* a change of venue was granted where a Virginia plaintiff brought suit in New York against a Pennsylvania defendant doing business in New York and Virginia on a cause of action occurring in Virginia. *Gulf Oil* cites factors which a court must consider in a change of venue motion, including ease of access to sources of proof, availability of witnesses (willing and unwilling) and view of the premises, if necessary. *Id.* at 508, 67 S.Ct. at 843. More general factors to be considered include public policy concerns and the interests of justice, congested calendars in one district, a community's interest in its local controversies, and the interpretation of a state's laws in that state's courts. *Id.* at 509, 67 S.Ct. at 843.

■ In addition, there is the overriding consideration that a plaintiff's choice of forum should rarely be disturbed. In a motion to change venue, the burden of proof is on the defendant-movant. *See Factors, Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215 (2d

Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). This court holds that the defendants have failed to meet this burden and their motion for change of venue is denied.

Defendants have submitted a list of sixty individuals, Kentucky residents, whom they intend to call as witnesses at trial. Defendants also maintain that the fact that it is a Kentucky contract which is the subject of this action should be determinative.

■ It is a combination of factors, not anyone in particular, which is dispositive. The residences of the parties, the accessibility of witnesses (not their number alone), the controlling law, and the original choice of forum all come into play. And where there is a mere balancing of factors, the defendant will not have met his burden of proof. *Usdan v. Dunn Paper Co.,* 392 F.Supp. 953 (E.D.N.Y.1975); *Mendelson v. Fleishchmann,* 386 F.Supp. 436 (S.D.N.Y. 1973); *American Contract Designers, Inc., supra.*

■ As the Second Circuit Court of Appeals noted in *Manu Intern., S.A., v. Avon Products, Inc.,* 641 F.2d 62 (2d Cir.1981): "contacts are relevant to the forum non conveniens inquiry only insofar as they relate to the ease and fairness of trying a case in a particular jurisdiction." *Id.* at 65. It is inevitable that there will be inconveniences incidental to defending this suit in New York as there would be for the plaintiff if the case were transferred to Kentucky. Either outcome would result in the transporting of parties, witnesses, and records. Since weight must be given to the original choice of forum, defendants' motion to change venue pursuant to 28 U.S.C. § 1404(a) is denied.

So Ordered.